# United States Court of Appeals for the Federal Circuit

2008-3117

KARLA M. MALLOY,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Karla M. Malloy, of Tacoma, Washington, pro se.

Ray E. Donahue, Principal Counsel, Office of General Counsel, United States Postal Service, of Washington, DC, for respondent. With him on the brief was Lori J. Dym, Chief Counsel, Appellate Litigation Division. Of counsel was Ellen M. Lynch, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3117

KARLA M. MALLOY,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in SF0752070100-I-1.

_____

DECIDED: August 25, 2009

_____

Before NEWMAN and MOORE, <u>Circuit Judges</u>, and GETTLEMAN, <u>District Judge</u>.[*]

NEWMAN, <u>Circuit Judge</u>.

Ms. Karla M. Malloy appeals the decision of the Merit Systems Protection Board (Board) affirming her removal from employment by the United States Postal Service (USPS). <u>Malloy v. United States Postal Serv.</u>, No. SF0752070100-I-1 (M.S.P.B. Nov. 9,

_____

[*]     Honorable Robert W. Gettleman, United States District Court for the Northern District of Illinois, sitting by designation.

2007).   We vacate the decision of the Board and remand for consideration of the evidence relating to mental impairment.

## BACKGROUND

Ms. Malloy entered employment with the USPS on October 18, 1980.   At the time of the events at issue she was in the position of data collection technician at the Seattle Bulk Mail Center.   In November 2005 Ms. June D. Hamilton became Ms. Malloy's immediate supervisor.   Because Ms. Malloy and Ms. Hamilton usually worked on different shifts, they communicated primarily by email.   The email evidence and other records before the Board show severe tensions and sharp exchanges, relating primarily to Ms. Malloy's requests for medical and dental leave, but also concerning the quality or timeliness of Ms. Malloy's work.

The record contains excerpts from Ms. Hamilton's electronic work journal, emails, and notes.   For example, on February 2, 2006 (Thursday) Ms. Malloy submitted leave slips requesting LWOP (leave-without-pay) for the following week, February 5 to February 9.   Ms. Hamilton denied the request on February 6, 2006 (Monday) and charged Ms. Malloy with AWOL on each requested day. Ms. Hamilton's journal entry on February 6 states:

> Karla left leaves slips for full week LWOP, No prior approval, I put her down as AWOL.   I was on leave on Friday, so I was not able to call her (I also believe that she knew I was taking leave on Fridays until the end of the month)

Ms. Hamilton did not contact Ms. Malloy during her absence to inform her of the denial of the request and the AWOL designation.

On February 16, 2006 Ms. Malloy requested leave for various purposes and Ms. Hamilton denied the request.   Ms. Hamilton's journal entry states:

Karla left leave slips for taking 9 Feb [sic: 19 Feb] off because 20 was her holiday. I denied for needs of the service — she also put leave in for 2-22 (Wed) dental prep & recovery, 3-1 for extractions and recovery, 3-2 dental recovery. All of these I denied needing supporting documents. The 19th I denied, by email stated, slips needed to be turned in before posting (1-25-06, also no calls to my home). She went in to talk to Bill Lindsay saying I was picking on her. He told her she had to come to work Sunday night.

In a February 22 journal entry, Ms. Hamilton referred to a voice mail from Ms. Malloy and stated: "Just a thought I am wondering if Karla has mental issues, I know she has anger problems."

The AJ's opinion does not contain Ms. Malloy's responses to these events, but it does contain several examples of ensuing responses, some extremely rude and disrespectful. On March 8, 2006 (Wednesday), upon Ms. Malloy's request for a telephone code for work-related matters, Ms. Hamilton emailed Ms. Malloy stating: "Karla, I left your [telephone] code on your desk, nothing else on it. Maybe it was tossed out." Ms. Malloy responded, in part:

So again — nice try June. You didn't give me any code, but since Arlene has indicated that I should have one — guess you had to make something up didn't you — CYA — again, nice try, but you aren't fooling me one bit. Too bad that's taken off your list of ways to harass me.

Another email from Ms. Malloy dated March 8 relates to another leave request which Ms. Hamilton denied:

Nice of you to let me know about my leave for Thursday — I guess this gives you one more think [sic] to throw up in my face.

You ignore my leave slip — just waiting to see if I will take it even if you haven't said yes — think you're sly, eh?

On May 7, 2006 Ms. Malloy challenged Ms. Hamilton as follows:

You do have a learning disability — don't you? It's either a learning disability or you aren't very bright — which do you prefer I consider it? Are you REALLY this dumb or are you just acting like it . . . .

The situation led to an Investigative Interview held on May 8, 2006, with Ms. Hamilton, Mr. Carl Smith (Distribution Operations Supervisor), union steward Mr. Rob Clark, and Ms. Malloy scheduled to be in attendance. Ms. Malloy left the interview shortly after it began, citing stress. Another Investigative Interview was held on June 7, 2006 with Ms. Hamilton, Mr. Michael Merlino (Manager of Maintenance Operations), Mr. Smith, Mr. Clark, and Ms. Malloy in attendance. Mr. Merlino's "note to file" dated June 8, 2006, included the following summary:

> At the outset of the interview Ms. Malloy demanded that other items be addressed prior to the interview. Ms. Hamilton informed her that she (Ms. Malloy) was directed to be here for an investigative interview, and not for other issues which Ms. Malloy wanted to address. Ms. Malloy then "went off" for approximately three minutes stating that she (Ms. Malloy) would not participate in the interview. Ms. Malloy accused Ms. Hamilton of "bullying" and "harassing" her. She stated that her doctor had told her she suffered from stress and the attempted interview was stressing her out. Ms. Malloy stated she thought it was a sham and that Ms. Hamilton should go ahead and do whatever she wanted to her without the interview as she was not going to participate. Ms. Malloy would not allow anyone to talk. Rather, she was extremely loud, belligerent and would interrupt anyone attempting to speak. Ms. Malloy then got up and departed the interview room. While departing Ms. Malloy would yell "goodbye" at anything Ms. Hamilton was attempting to say.
>
> Ms. Malloy appeared to be extremely unstable and delusional in her mannerisms. She appeared to purposefully show Ms. Hamilton nothing but disrespect and contempt. She appeared to be extremely hyper with her eye movement being rapid and unfocused. I feel Ms. Malloy is not mentally well and requires extensive help above the supervisory laymen level. I feel Ms. Malloy could very rapidly escalate to a more aggressive demeanor and pose a threat to personnel around her.

On August 29, 2006 USPS issued Ms. Malloy a Notice of Proposed Removal, charging her with disrespectful communication to a supervisor and failure to follow instructions. The notice listed seven specifications for the charge of disrespectful communication, all of which are emails or notes sent by Ms. Malloy to Ms. Hamilton,

including those quoted *ante*. The charge of failure to follow instructions listed two specifications, including an April 3, 2006 email from Ms. Malloy refusing to follow Ms. Hamilton's instruction concerning PS Form 1767 (entitled "Report of Hazard, Unsafe Condition or Practice").

In response to the proposed removal, Ms. Malloy and her union representative met with Plant Manager Mr. Vendetti, and then provided a twenty-nine-page written response to Mr. Vendetti. The written response states, in part, that Ms. Malloy has been under medical care and that she has supporting medical documentation. Mr. Vendetti issued a letter of removal, stating that upon careful consideration of all the evidence in the record, including the mitigating factors argued by Ms. Malloy, he decided to remove Ms. Malloy for the following reasons: "your behavior at our meeting and the tone and content of your written response to me further defines and delineates the very problem that forms the basis of your removal — that being lack of common courtesy and a blatant disrespect for others." The letter mentions medical concerns:

> You suggest that you are under medical care and are justified in walking out of meetings that stress you out. You did not offer any definitive medical evidence to me that would explain or mitigate your unacceptable behavior toward your Supervisor. You offered no assurance that you would not engage in this behavior in the future. Normally employees can maintain postal employment while under medical treatment as long as the treatment enables them to perform their duties at work in an appropriate manner. Treatment or not, your behavior, as laid out in the notice of proposed removal does not meet that criteria and warrants your removal.

Her removal from employment was effective on October 6, 2006.

Ms. Malloy appealed to the MSPB. She did not dispute that her communications to Ms. Hamilton contain inappropriate language, but argued at the hearing that mental impairment caused her to sometimes act inappropriately. At the hearing Ms. Malloy

provided extensive medical documentation. The record contains a report dated March 23, 2006 by "MS, LMFT Robert Herman" in the "TMA Mental Health Department," who diagnosed Ms. Malloy with "major depressive disorder, single episode, moderate." Mr. Herman repeated this diagnosis on March 30 and April 21, 2006. On June 19, 2006 Dr. Sarah Nyland issued a Certification of Health Care Provider (form provided by the United States Department of Labor) classifying Ms. Malloy's condition as a "4," which is defined in the certificate as "chronic conditions requiring treatments."[1] Dr. Nyland diagnosed Ms. Malloy as follows:

Depression with Anxiety

Patient with severe symptoms causing disruption of concentration, sleep, cognition requiring further evaluation and treatment.

Patient may miss up to 30 days per month due to illness

Not currently incapacitated as often as 30 days per month

Will need weekly treatment for up to 6 mo to 1 year

Due to patient illness she experiences symptoms . . . that at times make her unable to perform any work. These symptoms wax & wain [sic] and when able she can do all duties not limited by current back injury.

---

[1] Defined as: a chronic condition which:

(1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
(2) Continues over an extended period of time (including recurring episodes of a single underlying condition): and
(3) May cause episodic rather than a continuing period of incapacity (e.g, asthma, diabetes, epilepsy, etc.).

Definition under the Family and Medical Leave Act in Certification of Health Care (form provided by the United States Department of Labor), for Ms. Malloy by Dr. Sarah Nyland, at 4.

Dr. Nyland prescribed "counselor, physician" as possible health service providers and "prescription medications" as "a regimen of continuing treatment." Id. Dr. Nyland stated that Ms. Malloy's mental condition commenced approximately on February 1, 2006 and was expected to last for a year, and that Ms. Malloy "will be incapacitated episodically."

Dr. Nyland also issued an "Employee Physical Capacities Appraisal" diagnosing Ms. Malloy with "depression with anxiety (patient not at risk to self or others)." Dr. Nyland also described Ms. Malloy's physical limitations as: "when incapacitated unable to interact with others & perform complex tasks." These records appear to be co-extensive with the time of the offending remarks, suggesting that Ms. Malloy was seeking help.

The documentation submitted to the AJ showed that Ms. Malloy was also seen by mental health professional "MLT D Hollander" and was treated for depression on July 3, August 3, and October 5, 2006 and on January 18, 2007. The record showed that Ms. Malloy was also under the care of Dr. Frances Hogan for a condition described by Dr. Hogan as "severe recurrent major depression without psychotic features," from approximately September 26, 2006 to December 16, 2006. On December 5, 2006, Dr. Hogan wrote to the USPS summarizing Ms. Malloy's condition:

> From the history and in-person examination available to me or performed by myself, it appears that Ms. Karla Malloy's employment with U.S. Postal Service more likely than not contributed to her current severe depression and anxiety.
>
> Ms. Malloy is suffering under severe stress which is causing her to have severe anxiety and emotional symptoms. These severe emotional symptoms occur even when she is subject to memories alone of her recent employment. This makes her unable to function in a professional manner, and unable to attend to tasks to meet her job requirements. The stress has led to an over-activation of her sympathetic nervous system.

This has resulted in severe irritability or outbursts of anger. These stress-induced symptoms may result in inappropriate behavior.

Thus the record shows that Ms. Malloy was seen by mental health professionals and physicians on multiple occasions from 2006 to 2007, before, during, and after her removal. The record shows many patient visit notes and medical opinions. The record also contains lay evidence that Ms. Malloy was perceived by colleagues as having mental impairment, including Mr. Merlino's Investigative Interview notes shown ante, describing Ms. Malloy as "extremely hyper" and "not mentally well."

The AJ found that Ms. Malloy's written communications were disrespectful and unprofessional, and sustained the removal. The AJ's opinion states that Ms. Malloy stated that "she was under stress, depressed, could not think straight, concentrate or perform simple tasks." Malloy v. United States Postal Serv., SF0752070100-I-1 (M.S.P.B. June 1, 2007) ("Initial Decision") at 5. The AJ found "the appellant's assertions in this regard not credible and unsupported by the record." Id. at 5-6. The AJ did not mention any of the medical documents, although she stated that she had "reviewed her submissions." The AJ's entire reference to this aspect is as follows:

> I also find that the appellant has failed to establish any medical reason or provide any medical documentation that could justify or excuse her behavior. Although the appellant was repeatedly asked to provide medical documentation, she did not do so until the day of the hearing. I have reviewed these submissions and find no medical condition that would have caused her to say the things she said.

Id. at 9. The full Board denied review, leading to this appeal.

## ANALYSIS

A decision of the Board is reviewed to determine whether it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained

without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §7703(c); see also Cheeseman v. Office of Pers. Mgmt., 791 F.2d 138, 140 (Fed. Cir. 1986).

An employing agency must establish three criteria when taking an adverse action against an employee. First, it must establish by preponderant evidence that the charged conduct occurred. 5 U.S.C. §7701(c)(1)(B). Second, it must show a nexus between that conduct and the efficiency of the service. Id. §7513(a). Third, it must demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in Douglas v. Veterans Admin., 5 M.S.P.R. 280, 307-08 (1981). The AJ found that the USPS met all three criteria.

It is not disputed that the charged conduct occurred. The AJ found that it "impacted the efficiency of the service due to the tremendous amount of time required to deal with the events." Initial Decision at 13-14. However, Ms. Malloy's medical evidence was not discussed, and the AJ's statement that Ms. Malloy's representations about her medical condition were "not credible" is so totally at odds with the medical records as to raise strong doubts as to the thoroughness of the AJ's review.

The medical evidence is not disputed by the USPS on this appeal, although the USPS argues that Ms. Malloy's disrespectful statements and inadequate performance warrant her removal from service. However, when mental impairment or illness is reasonably substantiated, and is shown to be related to the ground of removal, this must be taken into account when taking an adverse action against the employee. See Hanna v. Dep't of Army, 42 M.S.P.R. 233, 241 (1989) (the employee's testimony that "he was under severe emotional distress at the time he committed the acts in question"

must be considered in assessing the reasonableness of the penalty); <u>see also</u> <u>Robb v.</u> <u>Dep't of Def.</u>, 77 M.S.P.R. 130, 133 (1997) ("An employee in an AWOL-based adverse action may rely upon medical evidence of illness not previously submitted to the agency as a defense to the action.").

The decision of the MSPB contains no analysis of the medical evidence, although the medical evidence in the record is voluminous and on its face may relate to Ms. Malloy's inappropriate behavior. Although the AJ stated that all of the <u>Douglas</u> factors were considered, the eleventh <u>Douglas</u> factor, 5 M.S.P.R. at 305 (mitigating circumstances such as "unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter"), appears to be directly relevant, but is not mentioned and is not shown to have been considered.[2]

It is established that mental impairment, when present, warrants consideration and weight in assessing the reasonableness of the action taken. <u>See</u> <u>Roseman v. Dep't</u> <u>of Treasury</u>, 76 M.S.P.R. 334, 345 (1997) ("The Board has held that evidence that an

---

[2] This court has long held: "It is not reversible error if the Board fails expressly to discuss all of the <u>Douglas</u> factors. The Board need only determine that the agency considered the factors significant to the particular case." <u>Kumferman v. Dep't of</u> <u>Navy</u>, 785 F.2d 286, 291 (Fed. Cir. 1986) (citations omitted); <u>see also</u> <u>Connolly v. Dep't</u> <u>of Justice</u>, 766 F.2d 507, 514 (Fed. Cir. 1985) ("[I]t is not per se reversible error for the board not to address the <u>Douglas</u> factors specifically."); <u>Nagel v. Dep't of Health &</u> <u>Human Servs.</u>, 707 F.2d 1384, 1386-87 (Fed. Cir. 1983) (holding that the Board is not required to articulate irrelevant factors when applying the <u>Douglas</u> analysis). In this case, the decision of the MSPB contains no analysis of the medical evidence submitted by Ms. Malloy—even though the medical evidence in the record is voluminous and on its face may relate to Ms. Malloy's inappropriate behavior. This lack of any analysis in the face of such evidence, coupled with the Board's statement that Ms. Malloy failed to "provide any medical documentation that could justify or excuse her behavior," leads us to conclude that both the AJ and the full Board failed to consider the medical evidence provided by Ms. Malloy.

employee's medical condition or mental impairment played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor."). See generally VanFossen v. Dep't of Hous. & Urban Dev., 748 F.2d 1579, 1581 (Fed. Cir. 1984) ("[F]ailure to consider a significant mitigating circumstance constitutes an abuse of discretion."); Nagel v. Dep't of Health & Human Servs., 707 F.2d 1384, 1386-87 (Fed. Cir. 1983) (all relevant Douglas factors must be considered).

The record before us does not show what consideration or argument may have been given to the medical evidence by the AJ, or on appeal to the full Board. The AJ stated only that the evidence was not submitted until the day of the hearing, and had been "reviewed." Mental impairment is recognized as a mitigating factor, and even if this submission were tardy (the AJ did not so state) Douglas and other precedent counsel toleration of less than optimum responses by a petitioner who may be mentally impaired. Cf. French v. Office of Pers. Mgmt., 810 F.2d 1118, 1119 (Fed. Cir. 1987) ("We hold that it is patently unreasonable and fundamentally unfair to require or allow an incompetent to act as advocate in such a setting where even a sane attorney would be confronted with a difficult task.").

Accordingly, we vacate the decision of the Board and remand for consideration of Ms. Malloy's evidence of mental impairment, and reapplication of the Douglas factors in light of this evidence.

VACATED AND REMANDED