NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID G. MAYESKE,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent.*

---

2011-3167

---

Petition for review of an arbitrator's decision by David P. Clark.

---

Decided: April 17, 2012

---

DAVID G. MAYESKE, of Crofton, Maryland, pro se.

COURTNEY S. MCNAMARA, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DEBORAH A. BYNUM, Assistant Director.

---

Before RADER, *Chief Judge*, LINN, and WALLACH, *Circuit Judges*.

PER CURIAM.

### INTRODUCTION

David G. Mayeske appeals from the April 29, 2011 arbitration award affirming the Department of the Navy's decision to suspend him for 30 days. *Dep't of the Navy, Navy Facilities Eng'g Command, Wash. v. Am. Fed. of Gov't Emps, Local 1923* (2011) (Clark, Arb.). Because the arbitrator's award was supported by substantial evidence, we *affirm*.

### BACKGROUND

Mr. Mayeske worked at the Department of the Navy, Navy Facilities Engineering Command ("Agency") as an Information Technology Specialist where he conducted various computer-related activities, including replacing toner cartridges for printing and copying machines. Mr. Mayeske believes his employment problems began in retaliation for writing to his Congressman in October 2008 to call attention to his belief that the Agency was not procuring recycled toner and print cartridges as required.

The Arbitrator found Mr. Mayeske's employment problems started some months prior when he was issued a Letter of Reprimand in June 2008 for failure to follow an order by his supervisor, Mr. Rice. In early October, around the time he wrote to his Congressman, Mr. Mayeske told the Executive Officer of the Agency that the Agency should be using a different type of toner cartridge in order to comply with the Department of Defense's procurement program encouraging use of recycled products. Mr. Mayeske's direct supervisor, Mr. Magri, then told him that it was improper to speak to the Executive Officer about these types of issues and he was not to

communicate to "nonessential people about the Information Office's needs." Mr. Mayeske repeatedly contacted Agency executives despite repeated instructions to the contrary.

The difficulties continued. For an unrelated incident, Mr. Mayeske was suspended for 14 days in part for "failure to follow instructions." Mr. Mayeske protested the 14-day suspension and tried to deliver a letter of protest to an Agency executive; an executive then wrote to Mr. Magri to explain that Mr. Mayeske should follow the prescribed chain of command. When, on April 3, 2009, Mr. Mayeske again attempted to contact an Agency executive directly the Agency's Business Manager "gave [Mr. Mayeske] a direct order to follow the chain of command with respect to the Agency's decision to suspend him." When later that same day Mr. Mayeske entered the Commanding Officer's office, he was asked to leave and he complied.

Mr. Mayeske's suspension was effective April 6, 2009 through April 20, 2009. Upon his return he was told to see Mr. Rice to get the key to his office. Instead he stacked two buckets to climb through the window into his office. On May 4, 2009, Mr. Mayeske failed to appear for a meeting scheduled with Mr. Rice and the Union Representative about the incident. On May 12, 2009, Mr. Rice proposed a 30-day suspension for Mr. Mayeske for two reasons: "Failure to Follow Instructions," and "Acting in an Unsafe Manner." The first reason was supported by four specifications,[1] the second reason was for climbing

---

[1]    The proposal for 30-day suspension states that: (1) Mayeske violated a direct order given on October 17, 2008, when he tried to present his protest to his 14-day suspension directly to the Commanding Officer, after being told not to make personal contact with the executive officers without going through the chain of command; (2)

through the window, after being "instructed [ ] to get down and come into the building" when it was "hazy, raining, and the sidewalk was wet at the time . . . ."[2] After the Agency issued a final decision to suspend Mr. Mayeske for 30 days, the Union filed a grievance, which the Agency denied, and the matter went to arbitration. The arbitrator sustained the Agency's decision and denied the grievance. Mr. Mayeske timely appealed.

DISCUSSION

I.

Mr. Mayeske's grievance is based upon a suspension, which is an adverse action under 5 U.S.C. § 7512(2). An arbitrator's award under Section 7512 is reviewed "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f) (2006).

This court has jurisdiction to review the Merit Systems Protection Board's ("Board") final decisions under 28 U.S.C. § 1295(a)(9). However, the scope of review is limited; we set aside a decision by the Board only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006).

---

Mayeske violated an express instruction to follow the chain of command when he entered the Commanding Officer's office on April 3, 2009; (3) Mayeske climbed through the office window despite Mr. Magri's instruction not to enter the building through the window; (4) Mayeske did not comply with Mr. Rice's instruction to attend a meeting on May 4, 2009.

    [2]    The Arbitrator found that this "additional charge . . . supports the necessity of discipline."

To sustain a suspension, the agency must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between [the] conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 5 M.S.P.R. 280, 307-08 (1981)." *Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1356 (Fed. Cir. 2009).

## II.

The first element is satisfied; the record shows that Mr. Mayeske "failed to follow instructions" on multiple occasions. In June 2008 he was issued a Letter of Reprimand for "Failure to Follow an Order," one of the three reasons for his 14-day suspension in April 2009 was "Failure to Follow Instructions," and one of the two reasons for his 30-day suspension was also "Failure to Follow Instructions." Mr. Mayeske was told not to contact the Commanding and Executive Officers without going through the chain of command, an instruction the Arbitrator found he repeatedly violated. The Arbitrator also found Mr. Mayeske did not comply with Mr. Magri's instruction not to climb through the office window and that Mr. Mayeske did not comply with Mr. Rice's instruction to meet about the incident on May 4, 2009. [3] Given

---

[3]  Mr. Mayeske argues that the order not to contact anyone was not previously enforced and was in conflict with his job requirements that routinely required him to service machines in the offices of the Commanding and Executive Officers. Furthermore, he says, he asked other employees for the key and was told to get it from Mr. Rice. Mr. Rice was in a meeting, and Mr. Mayeske felt he had no choice but to get into his office through the window. Finally, with regard to the May 2009 meeting, he asserts that he and the Union Representative were unprepared to meet at the designated time. None of these arguments contradict the Arbitrator's findings.

that he was told repeatedly to follow the chain of command, instructed not to climb through the window, and required to come to a meeting on May 4, 2009, and yet failed to follow these instructions, there is substantial evidence to support the arbitrator's finding that the charged conduct occurred.

The second element requires showing a nexus "between [the] conduct and the efficiency of the service." *Malloy*, 578 F. 3d at 1356. "Failure to follow instructions or abide by requirements affects the agency's ability to carry out its mission." *Blevins v. Dep't of the Army*, 26 M.S.P.R. 101, 104 (1985), *aff'd*, 790 F.2d 95 (Fed. Cir. 1986). On several occasions Mr. Mayeske failed to follow instructions. Therefore, the arbitrator's finding that Mr. Mayeske failed to follow instructions demonstrates a sufficient nexus and is supported by substantial evidence.

The third element requires the agency demonstrate the reasonableness of the penalty. *Malloy*, 578 F.3d at 1356. The arbitrator specifically considered the *Douglas* factors and found that the 30-day suspension was reasonable and the circumstances did not warrant mitigation of the penalty. Given the thoroughness of the arbitrator's consideration of the factors, the arbitrator sufficiently demonstrated the penalty imposed was reasonable. *See Quinton v. Dep't of Trans.*, 808 F.2d 826, 829 (Fed. Cir. 1986).

In sum, all three adverse action elements are met. Therefore, the arbitrator's decision to uphold the Agency's 30-day suspension was supported by substantial evidence.

**AFFIRMED**

Each party shall bear its own costs.