NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID BAL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2017-1200

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-15-0442-I-1.

---

Decided: March 30, 2018

---

JENNIFER H. WU, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, argued for petitioner.

ADAM E. LYONS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., L. MISHA PREHEIM, RENÉE BURBANK.

---

Before NEWMAN, MAYER, and STOLL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* STOLL.

Dissenting opinion filed by *Circuit Judge* MAYER.

STOLL, *Circuit Judge*.

David Bal appeals the final decision of the Merit Systems Protection Board sustaining his removal from the Navy. Mr. Bal argues that the Board improperly discounted his medical evidence of depression in assessing the reasonableness of his removal and failed to consider other relevant mitigating factors under *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981). We agree. For the reasons stated below, we vacate and remand the Board's final decision for further proceedings consistent with this opinion.

BACKGROUND

Mr. Bal was employed by the Navy as a Materials Engineer at the Naval Air Weapons Center, Surface and Strike Warfare Analysis Branch, in China Lake, California for over thirteen years. His daily responsibilities required him to complete assignments at different work locations. As of June 2014, Mr. Bal was assigned to a project with the Evolving Sea Sparrow Missile (ESSM) project, and he was assigned a workspace in the ESSM lab as well as a workspace in another building to complete administrative tasks. It is undisputed that prior to October 2014, Mr. Bal's performance was rated as "fully successful (or equivalent) or higher." J.A. 145.

In October 2014, however, Mr. Bal's supervisor, Calvin Martin, requested an evaluation of Mr. Bal's performance, after which he learned that Mr. Bal had not been reporting regularly to his assigned duty stations. Mr. Martin attempted to contact Mr. Bal at his assigned station but failed to locate him there. Mr. Bal was ultimately reached at home, and Mr. Martin requested an in-person meeting to discuss Mr. Bal's work performance and attendance.

That meeting occurred on November 4, 2014. During the meeting, Mr. Bal admitted that he had lost focus in his work assignments. Mr. Bal also admitted that, despite reporting otherwise on his timecards, he was not regularly attending work and was sometimes at home during work hours. Mr. Bal explained that he was dealing with marital problems, which led to his absences and to misreporting his time. After learning of Mr. Bal's marital strife, Mr. Martin ended the meeting and referred Mr. Bal to the employee assistance program.

After the November 4, 2014 meeting, Mr. Bal began reporting to work regularly and began making progress on his assigned tasks. Fearful that Mr. Bal might still have unresolved emotional issues and might be a danger to himself or others, Mr. Martin placed Mr. Bal on administrative leave and referred Mr. Bal to a psychologist, Dr. Kevin Seymour. On December 17, 2014, Mr. Bal emailed Mr. Martin and Kimberly Charlon, a human resources advisor, regarding his work performance and attendance. Mr. Bal apologized for his performance and explained that he was suffering from personal problems that affected his emotional well-being. Mr. Bal explained, however, that he had begun to practice good work habits and welcomed Dr. Seymour's evaluation. Mr. Bal also estimated that he missed and misreported a total of 405 hours, but he offered to pay back the time with annual leave.

As the Navy recommended, Mr. Bal began counseling with Dr. Seymour in December 2014. In a January 8, 2015 report, Dr. Seymour explained that he had seen Mr. Bal for two sessions. Dr. Seymour stated that in his medical opinion, Mr. Bal was "neither a danger to himself or to others" and that "the probability of danger to [him]self and/or others is extremely low and therefore not a concern." J.A. 171. Dr. Seymour opined, however, that "Mr. Bal ha[d] been quite depressed for many months both as a consequence of his job/career and as a conse-

quence of long standing marital problems." *Id.* Additionally, Dr. Seymour's report reflected that Mr. Bal had "problems on the job regarding his sense of purpose and value" and that Mr. Bal believed that "this suggested that he was not valued by the Navy and reflected feelings he had/has outside of work." *Id.* Dr. Seymour connected Mr. Bal's depression to his misconduct:

> As a result [Mr. Bal's] depression grew worse and he began to spend more time at his other (CAO) office. He started coming in late, even missing whole days and realized that no one seemed to care or notice. He again felt that this reflected the Navy's lack of interest in him or his work, exacerbating his depression. He described how he [was] slipping into "missing lots of days."

*Id.* Based on his evaluation, Dr. Seymour diagnosed Mr. Bal with "major depression." *Id.*

Mr. Bal continued counseling with Dr. Seymour. In a February 7, 2015 report, Dr. Seymour reported that Mr. Bal continued to suffer from major depression and stated that Mr. Bal's "depression and pending divorce clearly effect [sic] his self-destructive behavior, i.e., avoiding work, and lying on his time cards." J.A. 190. Consistent with his previous report, Dr. Seymour stated that during his absences without leave, Mr. Bal reported feeling "miserable," "meaningless," and "trapped" at home and at work, which "became worse as [Mr. Bal] avoided more and more of both work and his marriage." *Id.* Dr. Seymour also reported that Mr. Bal was receiving regular and continuing treatment for his "profound depression." *Id.*

Mr. Martin proposed to remove Mr. Bal from the Navy on January 23, 2015 for improper coding of time and attendance records and for absence without leave (AWOL). The proposal was sent to the deciding official at the Navy, Jacqueline Walters, to whom Mr. Bal formally

replied.  Mr. Bal argued in his response that his misconduct was related to his depression.  Mr. Bal explained, however, that he was seeking treatment and was surprised at the Navy's proposal to remove him given the Navy's referral to counseling.  In his response, Mr. Bal requested retroactive benefits under the Family and Medical Leave Act (FMLA) to cover his absences, arguing that he was entitled to these benefits due to his depression and resulting inability to request FMLA earlier.  After reviewing Mr. Bal's submissions, Ms. Walters denied Mr. Bal's FMLA request, sustained both charges, and upheld Mr. Bal's removal.  Ms. Walters's written decision did not mention Mr. Bal's depression or Dr. Seymour's letters as factors she considered.

Mr. Bal appealed his removal to the Board.  Mr. Bal also requested that Dr. Seymour provide a current report regarding his mental status and his response to treatment.  On June 15, 2015, Dr. Seymour reported that Mr. Bal had been seen for several sessions and that "these evaluations suggested that Mr. Bal was of superior intelligence, had serious marital problems, and was somewhat naïve about the problems he was facing."  J.A. 950.  Dr. Seymour explained, however, that Mr. Bal had developed plans to address his marital issues.  Dr. Seymour's report also reflected Mr. Bal's statement that he wanted to return to the Navy but the Navy considered him untrustworthy and in need of extensive supervision.  Dr. Seymour ultimately opined that "[t]est results and clinical experience suggest that [Mr. Bal] is clearly not a threat to himself or anyone else," and that Mr. Bal's "recognition of his problems and his remorse suggest that he is not likely to repeat the problem that has put him in the current situation."  *Id.*  Further, Dr. Seymour believed that "Mr. Bal had made substantial changes in his life," and stated that Mr. Bal "is not likely to need much supervision as he apparently is competent at work and has rejuvenated dedication."  J.A. 950–51.  Dr. Seymour

concluded: "Mr. Bal has made substantial progress over the last several months[,] which he is likely to sustain as his depression has lifted with this clear wake-up call in his life." J.A. 951.

Thereafter, the Administrative Judge conducted a hearing. At the hearing, the deciding official, Ms. Walters, testified that she considered Dr. Seymour's January and February 2015 letters, but found that they failed to provide any indication that Mr. Bal was incapacitated for purposes of his FMLA request. Ms. Walters also testified that she considered the *Douglas* factors in her removal decision but found the first factor, seriousness of the charges, the "most significant" factor. J.A. 1070 at 118:23–25. Ms. Walters stated that she weighed the first factor "heavily" because Mr. Bal's admission of not being at work for 405 hours and filling out his timecard inappropriately were "egregious" in her mind. J.A. 1071 at 119:1–6. Ms. Walters testified that she considered the role depression played in Mr. Bal's misconduct, but explained that Dr. Seymour's letters "didn't say that he was incapacitated." J.A. 1115 at 163:7–11. Additionally, Ms. Walters testified that she considered Mr. Bal's response to his proposed removal and his potential for rehabilitation but that "[b]ased on [] what Mr. Bal had put in his response, a person, in [her] opinion, can't be rehabilitated unless they admit and take responsibility for their actions. And Mr. Bal did not do that." J.A. 1071 at 119:19–23.

The Administrative Judge affirmed Mr. Bal's removal. The Administrative Judge found that the agency proved the improper coding and AWOL charges and proved a nexus between the charges and the efficiency of service. Regarding the reasonableness of Mr. Bal's removal penalty, the Administrative Judge stated that "[Ms.] Walters explained her decision in terms of the salient *Douglas* factors . . . and I see no reason to disturb the agency's assessment of these factors." J.A. 40. In response to

Mr. Bal's argument that his evidence of potential for rehabilitation and mental impairment had been ignored, the Administrative Judge found that "these contentions approach frivolity or ring hollow in light of other material in the record—e.g., there was no medical evidence the appellant's capacity to form intent had been compromised." *Id.* The Administrative Judge also found Mr. Bal's appeal distinct from other cases, stating:

> [H]ere [Mr. Bal] failed to offer persuasive evidence that his medical condition played a part in the charged misconduct—in fact, the medical evidence offered did not establish incapacity, [Mr. Bal] failed to establish his medical condition ever rose to the level of incapacity, and . . . there was not compelling evidence of medical impact around the time of the charged misconduct. Thus, I conclude [Mr. Bal's] medical condition was not a significant mitigating factor under the circumstances.

J.A. 41 n.5. The Administrative Judge also agreed with Ms. Walters's testimony that Mr. Bal did not have rehabilitation potential because he had not taken responsibility for his actions.

Mr. Bal appealed the Administrative Judge's decision to the full Board, and the Board affirmed. The Board found that "[a]lthough [Dr. Seymour's] reports state that [Mr. Bal] suffers from major depression as a result of his marital problems and related feelings of worthlessness, they do not establish that he was incapacitated from performing his duties or from requesting leave during the period at issue." J.A. 6. The Board noted that Dr. Seymour's reports stated that Mr. Bal's depression and pending divorce clearly affected his self-destructive behavior, i.e., avoiding work and lying on his timecards, but held that "contrary to [Mr. Bal's] claim on review, . . . that statement does not equate to a finding of incapacitation." *Id.* Regarding the reasonableness of Mr.

Bal's removal in light of his depression, the Board found that "none of the evidence [Mr. Bal] submitted on this issue was from at or near the time of the misconduct. Nor was it persuasive as to the effect of [Mr. Bal's] depression on the improper coding of his time and attendance records or his AWOL." J.A. 14. The Board did not otherwise comment on Mr. Bal's medical evidence of depression or consider Mr. Bal's potential for rehabilitation.

Mr. Bal appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's final decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009).

To take an adverse action against an employee, an agency must establish three criteria:

> First, it must establish by preponderant evidence that the charged conduct occurred. 5 U.S.C. § 7701(c)(1)(B). Second, it must show a nexus between that conduct and the efficiency of the service. *Id.* § 7513(a). Third, it must demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth in *Douglas* . . . .

*Malloy*, 578 F.3d at 1356. Mr. Bal does not dispute that the first two factors have been met. At issue in this appeal is the third factor—the reasonableness of Mr. Bal's removal in light of his evidence related to *Douglas* factors seven (consistency of the penalty with any applicable agency table of penalties), ten (potential for the employee's rehabilitation), eleven (mitigating circumstances such

as unusual job tensions, personality problems, *mental impairment*, harassment, or bad faith, malice or provocation on the part of others involved in the matter), and twelve (the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others).  *See Douglas*, 5 M.S.P.B. at 332.

Mr. Bal argues that the Board discounted his evidence of depression as a mitigating factor in determining the reasonableness of his removal under *Douglas*.  Mr. Bal argues that the Board discounted this evidence based on its erroneous findings that:  (1) "none of the evidence [Mr. Bal] submitted on this issue was from at or near the time of the misconduct," and (2) the evidence was not "persuasive as to the effect of [Mr. Bal's] depression on the improper coding of his time and attendance records or his AWOL."  J.A. 14.  He also argues that the Board relied on an improperly high standard for considering depression as a mitigating factor—i.e., that it must establish incapacity.

We agree with Mr. Bal that the Board's rejection of his evidence of depression as mitigating evidence was predicated on findings unsupported by substantial evidence.  First, the Board's finding that none of Mr. Bal's medical evidence was from at or near the time of his misconduct is plainly inconsistent with the record.  Mr. Bal's misconduct occurred between June and November 2014.  At the Navy's suggestion, Mr. Bal began treatment with Dr. Seymour in December 2014.  Dr. Seymour's January 8, 2015 report stated that "Mr. Bal ha[d] been quite depressed for *many* months" and suggested that Mr. Bal's depression began with a work incident in Spring 2014, preceding the time period of Mr. Bal's misconduct.  J.A. 171 (emphasis added).  Moreover, Dr. Seymour directly linked Mr. Bal's misconduct to his depression, stating that "[a]s a result" of Mr. Bal feeling undervalued at work and at home, "his depression grew worse and he began to spend more time at his other

(CAO) office.  He started coming in late, even missing whole days and realized that no one seemed to care or notice." *Id.*  Moreover, Dr. Seymour's February 7, 2015 report stated that Mr. Bal's "depression and pending divorce *clearly effect* [sic] his self-destructive behavior, i.e., avoiding work, and lying on his time cards." J.A. 190 (emphasis added).

This evidence corroborates Mr. Bal's claim that his misconduct during the relevant period was due to his depression.  Though Dr. Seymour's reports are dated after the period in question, Dr. Seymour unequivocally dated Mr. Bal's depression to the relevant period and directly linked his depression to the charged misconduct.  As the Board has recognized in other cases, "[w]here, as here, proximity in time, testimony, or other evidence provides the requisite link to the relevant period, the subsequent medical evidence can be very probative of a prior medical condition."  *Bowman v. Small Bus. Admin.*, 122 M.S.P.R. 217, 225 (2015).  Thus, the Board erred in discounting Mr. Bal's medical evidence based on its finding that the evidence was not from at or near the time period in question.

Second, the Board erred to the extent it required Mr. Bal's depression to be so severe as to incapacitate him.  The Board found that Mr. Bal's medical evidence did not establish incapacity.  Presumably, this finding related to Mr. Bal's FMLA claim.  That finding, however, infected the Board's findings regarding the reasonableness of Mr. Bal's removal under the *Douglas* factors because the Board repeated its finding regarding incapacity in its *Douglas* analysis.  But *Douglas* merely requires consideration of whether "mental impairment" was a mitigating factor to the charged misconduct.  *Douglas*, 5 M.S.P.B. at 332.  It does not require that the impairment result in full mental incapacitation.  The Government conceded as much during oral argument.  *See* Oral Arg. at 20:04–40, http://oralarguments.cafc.uscourts.gov/default.aspx?fl

=2017-1200.mp3.   Moreover, we have explained that "[w]hen *mental impairment* or illness is reasonably substantiated, and is shown to be related to the ground of removal, this must be taken into account when taking an adverse action against the employee." *Malloy*, 578 F.3d at 1356 (emphasis added).   Thus, the Board erred in discounting Mr. Bal's evidence based on the fact that Mr. Bal's depression did not result in incapacitation.

Based on these erroneous findings, the Board sustained Mr. Bal's removal without any analysis of his medical evidence of depression and the impact his depression had on his misconduct.   The Board's final decision is devoid of any substantive discussion of Dr. Seymour's reports diagnosing Mr. Bal with major depression and specifically linking his depression to the misconduct leading to his proposed removal.

In *Malloy*, we held that a remand was appropriate under similar circumstances.   In that case, the record contained undisputed medical evidence that the employee had been diagnosed and treated for depression.   *Id.* at 1355.   The employee submitted that evidence to the Board and argued that her depression was a mitigating factor under *Douglas*.   The Board found "the appellant's assertions in this regard not credible and unsupported by the record" without mentioning any of the medical documents other than generically stating that it had "reviewed her submissions."   *Id.* at 1356.   The Board further found that, despite the medical evidence, the employee "failed to establish any medical reason or provide any medical documentation that could justify or excuse her behavior." *Id.* at 1357.   On appeal, we remanded the Board's decision because it "contain[ed] no analysis of the medical evidence, although the medical evidence in the record is voluminous and on its face may relate to [the employee's] inappropriate behavior."   *Id.*

Here, the Administrative Judge acknowledged Dr. Seymour's reports and Mr. Bal's depression diagnosis. The Administrative Judge noted that the deciding official, Ms. Walters, considered the "salient *Douglas* factors" and, without discussing the evidence, concluded that there was no reason to disturb the agency's assessment of those factors. J.A. 40. The Administrative Judge also discounted Mr. Bal's evidence of depression as mitigating evidence because it "did not establish incapacity" or show how his depression played a part in the charged misconduct. J.A. 41 n.5. As we have explained, these findings are not supported by the record. On review, the Board compounded the Administrative Judge's errors by affirming the initial decision without any analysis of Dr. Seymour's reports, which diagnosed Mr. Bal with depression and directly linked his misconduct to his depression. "It is established that mental impairment, when present, warrants consideration and weight in assessing the reasonableness of the action taken." *Malloy*, 578 F.3d at 1357. Given Mr. Bal's uncontroverted evidence that his depression caused his misconduct, the Board should have explained why his evidence of mental impairment was insufficient to establish a mitigating circumstance under *Douglas*. *Id.*

In addition, the Board completely ignored *Douglas* factor ten and Mr. Bal's evidence of rehabilitation. Although the Administrative Judge cited Ms. Walters's testimony regarding rehabilitation in his initial decision and found it "reasonable," *see* J.A. 41, the Board affirmed without any analysis of Mr. Bal's evidence of rehabilitation. The record shows that Mr. Bal promptly returned to work and made improvement in his assignments. There was also evidence that Mr. Bal showed remorse by apologizing to his supervisors and wanting "to make amends" by offering to repay his time with annual leave. J.A. 220. Mr. Bal also submitted Dr. Seymour's February 7, 2015 report, which explained that Mr. Bal understood the

consequences of his actions and continued to seek "counseling to address the profound depression he now recognizes as real and a function of both his current reality and his past." J.A. 190–91. Dr. Seymour's June 15, 2015 report also stated that Mr. Bal had shown great improvement and made substantial behavioral changes. Specifically, Dr. Seymour opined that "[Mr. Bal's] recognition of his problems and his remorse suggest that he is not likely to repeat the problem that has put him in the current situation," that Mr. Bal was "not likely to need much supervision as he apparently is competent at work and has rejuvenated dedication," and that "Mr. Bal has made substantial progress over the last several months [] which he is likely to sustain as his depression has lifted with this clear wake-up call in his life." J.A. 950–51. This is competent evidence relevant to Mr. Bal's potential for rehabilitation under *Douglas* factor ten, and the Board erred by completely ignoring it.

Similarly, the Board's final decision contains no analysis of Mr. Bal's arguments regarding *Douglas* factors seven (consistency of the penalty with any applicable agency table of penalties) and twelve (the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others). Although the Board expressed satisfaction that the Administrative Judge "reviewed the factors the deciding official considered in reaching her decision," J.A. 13, *Douglas* factors seven and twelve, and the evidence regarding them, were not considered. The Board's mere statement that it considered all the relevant *Douglas* factors gives insufficient consideration of the evidence relevant to these additional mitigating *Douglas* factors. *See Malloy*, 578 F.3d at 1357 (remanding after finding that "[a]lthough the [Administrative Judge] stated that all of the *Douglas* factors were considered, the eleventh *Douglas* factor . . . is not mentioned and is not shown to have been considered").

We appreciate the seriousness of Mr. Bal's admitted misconduct. Indeed, charges of AWOL and falsifying time reports are no small matters. And we express no opinion as to the appropriate penalty ultimately imposed for such conduct on remand. Nor do we weigh Mr. Bal's mitigating evidence in the first instance. Instead, we hold that when evidence is presented that is relevant to mitigating circumstances under *Douglas*, such evidence must be addressed by the Board. In this case, we hold that the Board did not meet that obligation. On remand, if the Board finds that such evidence is unpersuasive or insufficient to mitigate Mr. Bal's misconduct and the penalty imposed, the Board should so state and articulate its reasoning for its holding.

## CONCLUSION

Accordingly, we vacate and remand the Board's decision for further proceedings consistent with this opinion.

## **VACATED AND REMANDED**

### COSTS

Costs to Petitioner.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**DAVID BAL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

_____

2017-1200

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-15-0442-I-1.

_____

MAYER, *Circuit Judge*, dissenting.

David Bal had two separate work sites at the Navy's sensitive China Lake facility, which apparently allowed him to be absent without leave and in dereliction of his duties for the equivalent of more than ten weeks in a four-month period before his supervisors noticed. He claims he was depressed over personal matters and because the Navy did not value him enough to notice that he was absent. Yet he studiously showed up to falsify his time and attendance records to keep his scheme going. I would affirm his dismissal without further ado.