NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KEITH ALEXANDER ASHE,**

*Petitioner*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

*Respondent*

---

2018-1390

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-16-0619-W-1.

-------------------------------------------------------------------------------

**KEITH ALEXANDER ASHE,**

*Petitioner*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**

*Respondent*

---

2018-1465

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-17-0352-I-1.

———————————

Decided: August 9, 2018

———————————

KEITH ALEXANDER ASHE, Bethesda, MD, pro se.

MELISSA BAKER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER.

———————————

Before O'MALLEY, REYNA, and HUGHES, *Circuit Judges.*

PER CURIAM.

In these companion appeals, Petitioner Keith Alexander Ashe seeks review of two Merit Systems Protection Board ("Board") decisions pertaining to his employment with the U.S. Department of Health and Human Services ("HHS"). In the first decision, the Board denied Ashe's request for corrective action under the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8), based on HHS's alleged retaliation against Ashe for certain disclosures he made to his supervisors. *See Ashe v. Dep't of Health & Human Servs.*, No. DC-1221-16-0619-W-1, 2018 WL 702226 (M.S.P.B. Feb. 2, 2018) ("*WPA Decision*"). In the second decision, the Board sustained Ashe's subsequent removal from HHS and rejected his whistleblower retaliation defense based on the same and additional disclosures. *See Ashe v. Dep't of Health & Human Servs.*, No. DC-0752-17-0352-I-1, 2018 WL 1146097 (M.S.P.B. Mar. 1, 2018) ("*Removal Decision*").

Because we find that each of the Board's decisions is supported by substantial evidence, we *affirm* both rulings.

## I. BACKGROUND

From October 2007 until his termination in February 2017, Ashe was employed at HHS's National Institutes of Health as an Industrial Engineer and Safety Engineering Activity Program Manager in the Division of Occupational Health and Safety, Office of Research Services. For most of that time, Ashe served as the Contracting Officer Representative on a biosafety laboratories contract.

Ashe alleges that, in April 2013, his supervisor, Dr. Deborah Wilson, instructed him to fabricate an engineering report stating that a laboratory was suitable for use in research, when in fact the lab failed to meet a critical regulatory requirement. Ashe refused to remove from the report what he viewed as a lab deficiency, and, instead, reported the incident to Dr. Wilson's supervisor. He also alleges that, in early 2015, he discovered evidence of contract fraud, which he likewise reported to Dr. Wilson and another supervisor.

Ashe asserts that, as a result of these disclosures, HHS retaliated against him, including by ordering that he undergo a psychiatric evaluation, giving him negative comments and low performance evaluations—despite his "stellar performance record over 9 years with awards and rapid promotions"—reassigning his duties, and scrutinizing his time and attendance. Pt'r Second Suppl. Br., at 1 ¶ 4, Dkt. 22.[1]

In January 2016, Ashe filed a complaint with the Office of Special Counsel, which did not investigate his whistleblower claims. He then filed an Individual Right

---

[1]    We cite here to Ashe's briefing in case No. 2018-1390.

of Action appeal with the Board, seeking corrective action against HHS. In a February 2018 initial decision, an administrative law judge denied Ashe's claim, finding that he failed to establish that the disclosures were protected under the WPA. *WPA Decision*, 2018 WL 702226, at 6–10.

Meanwhile, during much of 2016, Ashe failed to report to work. According to Dr. Wilson, Ashe was nonresponsive during this time and did not produce any appreciable work product. Also during this time, Ashe failed to update his supervisors of his whereabouts, even after he was suspended for fourteen days for refusing to use an electronic sign-in/sign-out board as instructed by Dr. Wilson. Thus, in January 2017, HHS initiated removal proceedings, and, one month later, terminated Ashe's employment. Ashe thereafter filed a separate appeal with the Board challenging his removal.

As an affirmative defense before the Board, Ashe argued that his removal was retaliation for the whistleblower disclosures described above, as well as additional disclosures that Ashe made in February and March 2012. In those disclosures, Ashe informed his supervisors that the Division of Occupational Health and Safety Branch Chief requested that Ashe use American Recovery Reinvestment Act funds to purchase equipment using a contract that expressly prohibited such purchases.

In a March 2018 initial decision, the administrative law judge rejected Ashe's whistleblower retaliation defense and sustained his removal. The judge again determined that Ashe failed to establish that his disclosures of report fabrication and contract fraud were protected, and also found that he failed to show that the 2012 disclosures contributed to his removal. *Removal Decision*, 2018 WL 1146097, at 5–12.

Ashe did not appeal either decision to the full Board, and the decisions therefore became final. Ashe appealed

to our court, however, seeking, *inter alia*, more than $11 million in compensatory and punitive damages.[2]  Pt'r Second Suppl. Br. 2 ¶ 6, Dkt. 22.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II. Discussion

The scope of our review in an appeal from a decision of the Board is limited.  We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).

Ashe challenges the Board's decisions denying his WPA claim for corrective action and affirming his removal from HHS.  We address each of Ashe's claims below.

## A. WPA Claim

To establish a prima facie case of retaliation for whistleblowing activity, a claimant must show by a preponderance of the evidence that (1) he made a protected disclosure, and (2) the disclosure was a contributing factor in a personnel action taken against the claimant.  *Briley*

---

[2]  Ashe also filed multiple suits in the District of Maryland against HHS, the U.S. Office of Special Counsel, and the Board, asserting various causes of action based on the same or similar misconduct alleged here. *See, e.g.*, *Ashe v. Price*, No. 8:17-cv-01969 (D. Md.); *Ashe v. Price*, No. 8:17-cv-01986 (D. Md.); *Ashe v. United States*, No. 8:17-cv-02071 (D. Md.); *Ashe v. United States*, No. 8:17-cv-02073 (D. Md.); *Ashe v. United States*, No. 8:17-cv-02076 (D. Md.); *Ashe v. United States*, 8:17-cv-02077 (D. Md.); *Ashe v. Hargan*, No. 8:17-cv-03730 (D. Md.); *Ashe v. Kerner*, No. 8:17-cv-03814 (D. Md.); *Ashe v. Merit Sys. Prot. Bd.*, No. 8:18-cv-00372 (D. Md.).

*v. Nat'l Archives & Records Admin.*, 236 F.3d 1373, 1378 (Fed. Cir. 2001) (citing 5 U.S.C. §§ 1221(e)(1), 2302(b)(8)). A disclosure is protected for purposes of the WPA if it pertains to information that the employee "reasonably believes evidences[] any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. §§ 2302(a)(2), (b)(8)(A).

Substantial evidence supports the Board's determination that Ashe's disclosure regarding the fabrication of an engineering report is not protected. Ashe alleges that he told HHS officials that Dr. Wilson instructed him to falsely state in a report that a laboratory was suitable for use in research, even though certain tests revealed that the lab failed to meet a critical safety requirement pertaining to differential pressure. The Board found that this disclosure is not protected based in part on Dr. Wilson's testimony that the test results were acceptable because the air flow remained negative or neutral to the anteroom and would therefore prevent contaminants from leaking out of the lab. *WPA Decision*, 2018 WL 702226, at 6. The Board also credited Dr. Wilson's testimony that administrative procedures would be used, if necessary, to ameliorate any remaining risk of contamination. *Id.* Finally, the Board credited her testimony that the protocol that she instructed Ashe to follow was widely used across the United States and accepted by other regulatory authorities. *Id.* Based on these findings, the Board concluded that Ashe's disclosure "amount[ed] to a disagreement with [Dr. Wilson's] conclusions regarding the verification test and the data to be included" in the report. *Id.* at 7. We see no reversible error in these findings. *See Harden-Williams v. Agency for Int'l Dev.*, 469 F. App'x 897, 900 (Fed. Cir. 2012) (per curiam) ("We are not permitted[] . . . to second-guess the Board in its fact-findings so long as they are supported by substantial evidence.").

The Board also stated that Ashe had not tied his disclosure to any law, rule, or regulation within the meaning of the WPA:

> Here, the appellant's alleged disclosures about his disagreements with the verification test results and the data reported on [sic] the . . . report cannot be stitched to any "law, rule or regulation" . . . since a method to conduct a scientific test is neither a statute nor a regulation, or a "rule." Indeed, neither empirical nor analytical science (including scientific tests, scientific experiments, scientific research, etc.) is amenable to being regulated by a legal or quasi-legal pronouncement.

*WPA Decision*, 2018 WL 702226, at 7. This statement fails to acknowledge that Ashe identified a specific regulation, 9 C.F.R. § 121.9(a)(6)—which requires the responsible official to ensure that laboratory testing results be documented and any deficiencies identified during an inspection be corrected—that he alleges Dr. Wilson violated.[3] *See* Pt'r Second Suppl. Br. 1 ¶ 2, Dkt. 22. We read this statement in context, however, to mean that the Board determined either that there was no actual violation of that provision, or that Ashe's belief that there was such a violation was not reasonable. Either determination is supported by the Board's factual findings described above, and both determinations foreclose Ashe's whistleblower claims.

---

[3] Further, the Board's statement that science is not "amenable to being regulated" is incorrect and irrelevant. Scientific research is regulated in many forms and by many agencies, including the Food and Drug Administration, the Environmental Protection Agency, the Department of Energy, and the Occupational Safety and Health Administration.

Substantial evidence also supports the Board's determination that Ashe's disclosure of contract fraud is not protected.  Ashe alleges that one of the agency's contractors violated a small business set-aside contracting requirement by outsourcing a large portion of the work to a sub-contractor.  But the evidence shows that Dr. Wilson was "equally as concerned about a potential contract violation," and there was no evidence that she was considering paying the contractor for any invoices that would violate the contract.  *WPA Decision*, 2018 WL 702226, at 10.  The Board therefore determined that, although Ashe "ha[d] a reasonable concern of a potential contract violation," the disclosure does not rise to the level of a protected disclosure because it was not "real or immediate."  *Id.*  Instead, the Board determined that Ashe's concerns merely "amounted to a discussion about a *potential* contract violation."  *Id.* (emphasis added); *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d 674, 678 (Fed. Cir. 2007) (rejecting the notion that "any mere thought, suggestion, or discussion of an action that someone might consider to be a violation of a law, rule, or regulation is a justification for a whistleblower complaint").  We see no reversible error in this conclusion.

We therefore affirm the Board's decision denying Ashe's WPA claim.

### B.  Whistleblower Retaliation
### Affirmative Defense to Ashe's Removal

When taking adverse action against an employee, an agency must (1) "establish by preponderant evidence that the charged conduct occurred," (2) "show a nexus between [the] conduct and the efficiency of the service," and (3) "demonstrate that the penalty imposed was reasonable in light of the relevant factors set forth" in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981).  *Malloy v. U.S. Postal Serv.*, 578 F.3d 1351, 1356 (Fed. Cir. 2009).

Substantial evidence supports the Board's determination that HHS carried its burden here. The evidence establishes, and Ashe concedes, that he was instructed to report to his office on multiple occasions and to use the electronic sign-in/sign-out board when working remotely, but that he failed to follow those instructions, even after his fourteen-day suspension. *Removal Decision*, 2018 WL 1146097, at 4. Ashe argued to the Board that he could not work out of his office because he was concerned for his safety, but the Board noted that this argument was "bare" and unsupported by evidence. *Id.* Finally, considering the testimony of the deciding official, the Board determined that HHS properly considered all mitigating factors, including Ashe's length of service, and that Ashe's removal was not unconscionable "given the facts and circumstances" of the case. *Id.* at 12–14. The Board's decision on this score is well supported.

We next turn to Ashe's whistleblower retaliation defense. First, the Board determined that Ashe's disclosures pertaining to fabrication of a report and contract fraud discussed above are unprotected. *Id.* at 6–12. For the reasons stated above, we find that substantial evidence supports the Board's determination with respect to both disclosures.

Second, the Board determined that Ashe's disclosures pertaining to the Branch Chief's request for Ashe to use certain funds to purchase equipment using a contract that explicitly prohibited such purchases did not contribute to his removal. The Board noted that those disclosures occurred in February and March 2012, approximately five years before he was removed. *Id.* at 5–6. The Board found the five-year gap between the disclosures and the removal "to be too remote in time" to satisfy Ashe's burden. *Id.* at 6; *see Nuri v. Merit Sys. Prot. Bd.*, 695 F. App'x 550, 553 (Fed. Cir. 2017) (per curiam) (sustaining removal where the allegedly protected disclosure was

made seven years before the appellant's removal). These findings are reasonable and supported.

We therefore affirm the Board's decision sustaining Ashe's removal from HHS.[4]

### III. CONCLUSION

We have considered Ashe's remaining arguments and find them unpersuasive. For the reasons stated above, we *affirm* each of the Board's rulings.

### **AFFIRMED**

### COSTS

No costs.

---

[4]    Ashe also refers in passing to the Board's decision denying his motion for sanctions. Ashe alleged in that motion that HHS failed to comply with procedural deadlines and that default judgment was warranted. The administrative law judge excused the agency's untimeliness and reset the filing deadlines because HHS had not timely received the Board's Acknowledgement Order after the appeal was filed. *Removal Decision*, 2018 WL 1146097, at 2 n.2. To the extent Ashe argues that this decision was in error, we disagree. It is well established that the Board has discretion to refuse to grant sanctions in response to alleged violations of the Board's procedures and deadlines, and we will not second guess the Board's decision absent a showing that the Board's "abuse of discretion is clear and . . . harmful." *See Baker v. Dep't of Health & Human Servs.*, 912 F.2d 1448, 1457 (Fed. Cir. 1990) (internal quotation marks omitted). Ashe has not made such a showing here.