# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

TINA C. VILCA,
           Appellant,

      v.

DEPARTMENT OF HOMELAND
  SECURITY,
           Agency.

DOCKET NUMBER
DE-0752-20-0272-I-1

DATE: February 17, 2023

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Tina C. Vilca, Monument, Colorado, pro se.

Rebecca E. Pope, Atlanta, Georgia, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which found that (1) the agency proved the charges of disruptive conduct, failure to cooperate, and failure to follow leave procedures, (2) the appellant did not prove any of her affirmative defenses, and (3) removal was an appropriate penalty.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to clarify and supplement the administrative judge's analysis of the penalty and the appellant's affirmative defenses of reprisal and disability discrimination. Except as expressly MODIFIED herein, we AFFIRM the initial decision.

## BACKGROUND

¶2      The following facts, as recited in the initial decision, are generally undisputed. Initial Appeal File (IAF), Tab 63, Initial Decision (ID). The appellant was appointed as a Writer-Editor with the agency's Intelligence and Analysis Front Office on September 1, 2019. ID at 2, 5; IAF, Tab 10 at 57. The agency placed the appellant on administrative leave on February 11, 2020, because of concerning statements that she made to the reasonable accommodation specialist on or around February 6, 2020. ID at 12-13; IAF, Tab 41 at 20-21. Following an investigation, the agency proposed her removal based on charges of disruptive conduct, failure to cooperate, and failure to follow leave procedures. ID at 2, 13-14; IAF, Tab 10 at 45-53. The deciding official issued a decision that sustained all three charges and upheld the removal, effective April 17, 2020. ID

at 2; IAF, Tab 10 at 26-34, Tab 37 at 4. The appellant filed this appeal and requested a hearing. ID at 1-2; IAF, Tab 1. The appellant subsequently withdrew her hearing request. ID at 2; IAF, Tab 19 at 1.

¶3    The administrative judge issued an initial decision based on the written record in which she affirmed the removal action. ID at 2-3. In pertinent part, the administrative judge found that (1) the agency proved all the charges and specifications (except for one specification in the failure to follow leave procedures charge), (2) the agency provided the appellant with due process, (3) the appellant failed to prove her affirmative defenses of harmful procedural error, reprisal for requesting an accommodation and for filing an equal employment opportunity (EEO) complaint, and disability discrimination (failure to accommodate and disparate treatment), (4) the agency proved nexus, and (5) removal was an appropriate penalty for the sustained misconduct. ID at 14-46. The appellant has filed a petition for review, and the agency has filed a response. Petition for Review (PFR) File, Tabs 3, 5.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶4    The Transportation Safety Administration (TSA) is not subject to the provisions of 5 U.S.C. chapter 75. *Winlock v. Department of Homeland Security*, 110 M.S.P.R. 521, ¶ 5 (2009), *aff'd*, 370 F. App'x 119 (Fed. Cir. 2010). Instead, TSA Management Directive (MD) 1100.75-3, entitled "Addressing Unacceptable Performance and Conduct," applies to this appeal and sets forth policies and procedures for the agency's use of "non-disciplinary, corrective, disciplinary, and adverse actions to address unacceptable employee performance and conduct." *Id*., ¶ 6 (citing to MD 1100.75-3 by its prior title of "Addressing Conduct and Performance Problems"); IAF, Tab 10 at 129. Under MD 1100.75-3, the agency must prove by preponderant evidence[2] that its action is for such cause as will

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a purported or

promote the efficiency of the service, there is a nexus between a legitimate Government interest and the matter that forms the basis for the action, and the penalty is appropriate, taking into account the relevant factors under *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981), and any other relevant considerations. *Winlock*, 110 M.S.P.R. 521, ¶ 11.

<u>We affirm the administrative judge's conclusion that the agency proved all three charges by preponderant evidence.</u>

*Disruptive conduct charge*

¶5       In the single specification of the disruptive conduct charge, the agency alleged that the appellant made the following statements to the reasonable accommodation specialist during a telephone call on February 6, 2020: "I need to get away from my supervisor or I am going to flip ou[t] and hurt him or someone else and go to jail and lose my job, he reminds me of an ex-boyfriend that won't leave you alone and it's a little stalkerish."  IAF, Tab 10 at 26.  The administrative judge evaluated the charge as a threat under *Metz v. Department of the Treasury*, 780 F.2d 1001, 1004 (Fed. Cir. 1986), and found that the agency proved that the appellant made the statements in question and they were actionable threats under *Metz*.  ID at 14-20.  Accordingly, the administrative judge found that the agency proved the specification and charge.  ID at 20.

¶6       On review, the appellant denies threatening her supervisor.  PFR File, Tab 3 at 11.  Her arguments regarding the administrative judge's analysis of this charge largely involved the credibility of the reasonable accommodation specialist and can be summarized as follows:  (1) the charge is based on hearsay evidence; (2) the administrative judge's analysis did not apply all of the factors for evaluating witness credibility under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), including witness demeanor, because she did not hold a hearing; (3) the record does not contain a sworn statement from the

contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q); IAF, Tab 10 at 141.

reasonable accommodation specialist; and (4) the agency did not provide evidence that the reasonable accommodation specialist was a "respectable character witness." PFR File, Tab 3 at 6-13. These arguments are not persuasive.

¶7 The appellant is correct that the reasonable accommodation specialist's email about the appellant's statements was hearsay evidence. However, hearsay evidence is admissible in Board proceedings and the assessment of its probative value necessarily depends on the circumstances of each case. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83-84 (1981).

¶8 The reason that the administrative judge was unable to evaluate witness demeanor was because the appellant withdrew her request for a hearing. IAF, Tab 22 at 1. The appellant's argument that the agency should have presented evidence through "video technology," or tape-recorded telephonic depositions, is not persuasive because the appeal would be decided on the written record. PFR File, Tab 3 at 12-13.

¶9 The administrative judge identified the *Hillen* factors for assessing credibility and the factors that affect the weight to be accorded to hearsay evidence in the initial decision. ID at 4-5. The administrative judge acknowledged that the record does not contain a sworn statement from the reasonable accommodation specialist. ID at 15-16. Instead, she noted that the agency relied on an email that the reasonable accommodation specialist sent "immediate[ly]" to the Workplace Violence Prevention Program, which the reasonable accommodation specialist confirmed was accurate in a subsequent interview with the agency investigator. ID at 16-17; IAF, Tab 27 at 9. The administrative judge noted that the reasonable accommodation specialist's correspondence with the Workplace Violence Prevention Program indicated that the appellant's responses "concerned" her but that she was "unsure how to move forward" because she was "unable to ascertain if the employee [was] saying this to be playful or if she really mean[t] it." ID at 16. During the investigation, the reasonable accommodation specialist described the appellant's demeanor during

the telephone conversation as "hyperagitated and frustrated" and "animated and desperate – trying to convey how frustrated she was with her supervisor." *Id.*; IAF, Tab 27 at 9.

¶10    The administrative judge noted that the appellant did not deny making the statements in question as described in the specification. ID at 16; IAF, Tab 10 at 35-36, Tab 39. She determined that the reasonable accommodation specialist, other agency officials, and the appellant's supervisor (the target of her statements) took the appellant's statements seriously as a potential threat. ID at 17-18. She considered the context in which the statements were made, namely that the appellant was "beyond frustrated" with her supervisor for discontinuing her temporary schedule, denying her request for a reasonable accommodation, and attempting to ensure that she was reporting for work as scheduled, completing the work assigned to her, and following agency guidelines. ID at 19. The administrative judge concluded that it was unlikely that the appellant was "venting" to the reasonable accommodation specialist because they were neither friends nor colleagues with a prior relationship at the time of the call. *Id.*

¶11    Under the circumstances, the administrative judge properly evaluated the *Metz* factors and the relevant factors for assessing the probative value of hearsay evidence, and we agree with her decision to sustain this specification and charge.[3]

---

[3] Because the appellant's statements occurred in the context of a conversation with a reasonable accommodation specialist about the agency's decision to deny her requested accommodation, among other things, we have considered the Board's prior holding that certain intemperate employee comments, which would otherwise support disciplinary action, will not support disciplinary action if made in certain emotional, confrontation contexts, such as the grievance process or the EEO counseling process. *Hamilton v. Department of Veterans Affairs*, 115 M.S.P.R. 673, ¶ 11 (2011) (citing *Daigle v. Department of Veterans Affairs*, 84 M.S.P.R. 625, 628 (1999), and *Special Counsel v. Nielson*, 71 M.S.P.R. 161, 175-76 (1996)). However, this holding is inapplicable to this case because the appellant was not merely venting about her supervisor or his decision to deny her accommodation request; rather, the appellant's statements were appropriately construed by the reasonable accommodation specialist and other agency officials as a threat. *See, e.g.*, *Berkner v. Department of Commerce*, 116 M.S.P.R. 277, ¶¶ 2-17 (2011) (describing Ms. Berkner's statements to the union Chief Steward during

The Board will not disturb an administrative judge's findings when, as here, she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987). We have considered the appellant's remaining arguments on review regarding this charge, but a different outcome is not warranted.

*Failure to cooperate charge*

¶12    The agency alleged in specification one that, on February 25, 26, and 27, 2020, and on March 1, 2020, the appellant failed to comply after an Inquiry Officer contacted her "regarding [her] requirement to comply with TSA policy and cooperate with the TSA management inquiry regarding the [disruptive conduct] incident." IAF, Tab 10 at 45. The administrative judge noted that the agency must prove that the appellant was contacted to provide information as part of an investigation, and she failed to cooperate with the management inquiry. ID at 20. The administrative judge found that the relevant events occurred as follows: the Inquiry Officer contacted the appellant to schedule an interview; the appellant canceled the scheduled interview because she was seeking a representative; the Inquiry Officer initially provided the appellant with a designation of representative form but was later advised that she was not entitled to a representative;[4] the Inquiry Officer advised the appellant that his deadline to complete the investigation was March 3, 2020; the appellant told him that she was

_____

a meeting about a then-pending discrimination complaint threatening suicide and broadly indicating a willingness to harm multiple agency employees if the agency removed her, distinguishing Ms. Berkner's statements from Mr. Daigle's conditional statements and other statements to an EEO counselor about his supervisor, and affirming Ms. Berkner's removal based on a single charge of making inappropriate statements); *Hamilton*, 115 M.S.P.R. 673, ¶ 11 (stating that an employee generally cannot be discharged for rude or impertinent conduct in the course of presenting grievances absent gross insubordination or threats of physical harm).

[4] The appellant was not a member of the bargaining unit. IAF, Tab 10 at 24.

trying to find an attorney; and she did not provide a statement to the Inquiry Officer or otherwise participate in the investigative interview by the March 3, 2020 deadline. ID at 20-21.

¶13      The administrative judge evaluated the appellant's argument that she was entitled to representation under agency policy MD 1100.63-3, which allows employees to have representation in "[r]esponding to an adverse action," but concluded that placement on administrative leave was not an adverse action.[5] ID at 21-22. The administrative judge addressed the appellant's concerns about possible implications to her Fifth Amendment rights, but she found that those concerns did not justify the appellant's failure to appear for the investigative interview. ID at 22-23. The administrative judge concluded that the agency proved that it contacted the appellant to participate in the investigation and she failed to participate in that investigation. *Id.*

¶14      The appellant asserts on review that she "never stated [that] she would not participate in the investigation"; rather, she contends that she needed and requested the assistance of an attorney. PFR File, Tab 3 at 19. Nevertheless, the appellant was required to meet with the investigator, and she did not meet with him or otherwise provide him with a statement by the deadline that he had

---

[5] The appellant challenges this finding on review, arguing that she suffered an "adverse employment action" and that we should consider the placement on administrative leave as an adverse action because it "coincided with [her] termination." PFR File, Tab 3 at 20-22. As support for this argument, she relies on the U.S. Supreme Court's definition of a tangible employment action, i.e., "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 20-21 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). However, that terminology was used by the Court to discuss vicarious liability in a sexual harassment case and is not applicable to this removal appeal. We agree with the administrative judge that placement on paid administrative leave is not an adverse action. IAF, Tab 10 at 139 (defining an "adverse action" in the TSA Handbook to MD No. 1100.75-3 as a "suspension of more than 14 days, [] an involuntary demotion for performance/conduct, or a removal"); *cf.* 5 U.S.C. § 7512 (defining an adverse action as a removal, a suspension for more than 14 days, a reduction in grade or pay, and a furlough of 30 days or less).

previously identified.  We therefore agree with the administrative judge that the agency proved that the appellant failed to cooperate as described in this specification.

¶15    The appellant does not challenge the administrative judge's analysis of specification two of this charge involving allegations that, in response to her supervisor's emails asking for an update on two projects, the appellant stated, "No update" and "stop harassing me."  ID at 23-24; IAF, Tab 10 at 45.  We affirm the administrative judge's decision to sustain this specification.  We also affirm the administrative judge's decision to sustain the failure to cooperate charge based on the two sustained specifications.

*Failure to follow leave procedures charge*

¶16    The appellant does not appear to challenge the administrative judge's conclusion that the agency proved two of the three specifications of the failure to follow leave procedures charge or the decision to sustain that charge.  We affirm the administrative judge's decision to sustain the charge based on the two sustained specifications.  ID at 24-29; *see Burroughs v. Department of the Army,* [918 F.2d 170,](#) 172 (Fed. Cir. 1990) (holding that, when more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).  Having sustained the three charges, we now turn to the appellant's affirmative defenses.

We affirm, as modified, the administrative judge's conclusion that the appellant did not prove that the agency violated her due process rights, committed harmful procedural error, retaliated against her, or discriminated against her based on her disability.

¶17    The administrative judge found that the agency afforded the appellant due process, and the appellant did not prove her claims of harmful procedural error, reprisal, or disability discrimination (based on failure to accommodate and disparate treatment).  ID at 29-42.  The appellant challenges on review most of

the administrative judge's findings in this regard.  We will address her arguments in turn.

*Due process/harmful procedural error*

¶18    In the initial decision, the administrative judge addressed the appellant's claim that the deciding official considered new and material information that she did not receive (recommendations from the investigation), and she did not have a meaningful opportunity to respond to the notice of proposed removal because the deciding official considered a February 4, 2020 Letter of Counseling.  ID at 30-31.  The administrative judge found that the agency did not violate the appellant's due process rights in either respect because there was no evidence that the investigative documents that she thought had been provided to the deciding official were even created—let alone considered—by the deciding official.  ID at 30.  Additionally, the appellant knew that the Letter of Counseling would be considered as proof that she was on notice of the policies that she had violated. ID at 30-31; IAF, Tab 10 at 48-49.

¶19    The administrative judge found no agency error in regard to the following claims made by the appellant:  (1) the agency placed her on administrative leave "without evidence and the supported appropriate documentation"; (2) agency officials told other people about her statements to the reasonable accommodation specialist; (3) the deciding official considered new and material information; and (4) she was not given an opportunity to respond to the proposed removal.  ID at 31-33.  The administrative judge considered the appellant's contention that the administrative inquiry was incomplete and inadequate.  ID at 33.  Although the administrative judge assumed that the appellant established an error in the application of the agency's administrative investigation procedures in this regard, she concluded that the appellant failed to prove any prejudice or harm caused by the assumed error.  *Id.*

¶20    Our analysis of the due process and harmful error issues presented is generally the same regardless of whether we apply 5 U.S.C. chapter 75 or the

agency's policies. Regarding due process, the agency's Handbook to MD 1100.75-3, like 5 U.S.C. chapter 75, requires the agency to give an employee written notice of its proposed action, an opportunity to respond, and written notice of the decision. *Compare* IAF, Tab 10 at 142, *with* 5 U.S.C. § 7513. MD 1100.75-3 also states that failure to follow the provisions of the directive, the Handbook, or its appendices may be grounds for reversal of an agency action only if such failure caused the agency to reach a conclusion different from the one it would have reached in the absence of the failure. *Compare* IAF, Tab 10 at 134, *with* 5 C.F.R. § 1201.4(r) (definition of harmful error).

¶21    We have considered the appellant's arguments on review regarding these issues, but they do not warrant a different outcome. Despite the appellant's contention that the agency erred by conducting an incomplete investigation or by having any deficiencies in its report or paperwork, she has not met her burden to show that the agency likely would have reached a different conclusion in the absence or cure of the error. PFR File, Tab 3 at 13-14; *see Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991). Regarding the appellant's contention that she was not given an adequate opportunity to rebut the notice of proposed removal, PFR File, Tab 3 at 15, the record reflects that she responded in writing to the notice of proposed removal, and her response was considered by the deciding official, IAF, Tab 10 at 28, 35-44. Moreover, there is no evidence that the deciding official relied on any documents that were not also provided to the appellant. Accordingly, we discern no error with the administrative judge's analysis or conclusions on the issues of due process or harmful procedural error.

> *Reprisal for requesting an accommodation and for engaging in EEO activity*

¶22    In January 2020, the appellant requested a reasonable accommodation and initiated an EEO complaint. ID at 36; IAF, Tab 30 at 54, Tab 40 at 24-31, Tab 48 at 29-30. The administrative judge found that the proposing and deciding officials were aware of her reasonable accommodation request and her EEO

complaint, but she concluded that the appellant did not prove by preponderant evidence that reprisal for any such activity was a motivating factor in the agency's decision to remove her. ID at 36-38. The appellant does not appear to challenge on review the administrative judge's motivating factor analysis or the conclusion that the appellant did not prove reprisal for her accommodation request or other prior EEO activity, and we see no reason to disturb those findings.

¶23    In the initial decision, the administrative judge discussed the various methods of direct and circumstantial evidence, and she concluded that the appellant did not prove by preponderant evidence that her prior EEO activity was a motivating factor in the removal action. ID at 34-38. The Board has clarified that administrative judges should consider the evidence as a whole to determine if the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 30 (2016), *clarified by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-24. We find that, consistent with *Pridgen* and *Gardner*, the administrative judge properly considered the documentary and testimonial evidence as a whole in evaluating the appellant's reprisal claims.[6]

---

[6] Regarding the reprisal claim for prior EEO activity, we discern no error with the administrative judge's finding that the appellant did not meet her initial burden to prove motivating factor. As such, we also find that the appellant would be unable to prove "but-for" causation. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-22, 29-33. As for the appellant's claims of reprisal for prior reasonable accommodation requests and disability discrimination complaints, this type of claim requires that the appellant prove that the reprisal was a but-for cause of the adverse action. We find that because the administrative judge found that the appellant did not show that the reprisal was even a motivating factor, the appellant did not meet her burden to prove but-for causation. *Id*. at ¶¶ 46-47.

*Disability discrimination*

¶24    In the initial decision, the administrative judge addressed the appellant's claims of failure to accommodate and disparate treatment disability discrimination based on her diagnosis of adjustment disorder.[7]  ID at 38-42. Regarding failure to accommodate, the administrative judge found that the appellant was an individual with a disability.[8]  ID at 39.    However, the administrative judge concluded that the appellant did not prove that the removal was based on her disability because she did not demonstrate (1) that the agency's denial of her reasonable accommodation request was connected to the removal action and (2) that the misconduct resulted from any failure to provide a reasonable accommodation, or had the agency provided the requested accommodation, the misconduct would not have occurred.  ID at 41.  In pertinent part, the administrative judge stated that the only misconduct that occurred after the denial of the appellant's requested accommodation was her failure to cooperate with the investigation[9] and there was nothing in the record to indicate

---

[7] Adjustment disorder is defined as "[t]he development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s)." *American Psychiatric Association*, Diagnostic and Statistical Manual of Mental Disorders, 286 (5th ed. 2013).  The symptoms or behaviors are "clinically significant" and can be evidenced by "[m]arked distress that is out of proportion to the severity or intensity of the stressor, taking into account the external context and the cultural factors that might influence symptom severity and presentation" and/or "[s]ignificant impairment in social, occupational, or other important areas of functioning." *Id.*

[8] The administrative judge considered the appellant's allegation, made under penalty of perjury, that the reasonable accommodation specialist speculated that her adjustment disorder was not a real disability.  ID at 40 n.3.  The administrative judge considered the evidence in the record and did not credit the appellant's allegation in this regard. ID at 40 n.3.

[9] This appears to be a misstatement.  According to the chronology described in the initial decision, the reasonable accommodation specialist advised the appellant on February 6, 2020, that the agency denied her reasonable accommodation request and during a subsequent call that day, the appellant made the threatening statements as described in the disruptive conduct specification and charge.  ID at 12-13.

that her disability or need for an accommodation impeded her ability to cooperate in that investigation. *Id.* Regarding disparate treatment, the administrative judge applied a mixed-motive analysis, found that the record was devoid of any evidence that the proposing or deciding officials were motivated by discriminatory intent, noted that the record contains no evidence that a similarly situated employee who was not disabled but engaged in similar misconduct was treated differently from the appellant, and concluded that the appellant did not prove this claim. ID at 41-42.

¶25    On review, the appellant asserts that the agency failed to provide her with a reasonable accommodation, including while she was on administrative leave. PFR File, Tab 3 at 16. She also asserts—for the first time—that her disability prevented her from participating in the investigation.[10] *Id*. To this end, she contends generically and without support that "[i]ndividuals with mental disabilities are vulnerable to making false confessions under interrogation, prompting a cavalcade of devastating consequences for both the individual confessors and the cause of justice." *Id.* at 17. She cites to 42 U.S.C. § 12132 (1990) to support her argument that she was entitled to an accommodation. *Id.* at 18. She appears to contend that her request for an attorney to assist her during the investigative process was a request for a reasonable accommodation. *See id.* at 19-20. She further asserts that, because of her disability, her inability to have representation during the investigative interview process "[could] have resulted in conviction with actual imprisonment or a suspended term of imprisonment." *Id.* at 20.

---

[10] The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016); 5 C.F.R. § 1201.115(d). However, we will address this argument because the appellant is pro se, and she appears to be responding to the administrative judge's statement in the initial decision that there was nothing in the record to indicate that her disability or need for a reasonable accommodation impeded her ability to cooperate in the investigation. ID at 41.

¶26 As a preliminary matter, we discern no error with the administrative judge's conclusion that the appellant suffers from adjustment disorder, which affected areas such as thinking, concentrating, and communicating, and she is therefore an individual with a disability. ID at 39.

¶27 Although the appellant does not appear to specifically challenge on review the administrative judge's analysis of her disparate treatment disability discrimination claim, we modify the initial decision to supplement the administrative judge's analysis of this claim. The administrative judge relied on *Southerland v. Department of Defense*, 119 M.S.P.R. 566 (2013), to conclude that a mixed-motive analysis was the appropriate legal standard, and she found that the appellant did not prove this claim,[11] ID at 41-42. In *Pridgen,* 2022 MSPB 31, ¶¶ 35-42, the Board clarified the proper standard for analyzing a status-based disability discrimination claim. We modify the initial decision accordingly. Under both *Southerland* and *Pridgen*, however, the appellant bears the initial burden to show that her disability was a motivating factor in the removal action. *Pridgen*, 2022 MSPB 31, ¶ 40; *Southerland*, 119 M.S.P.R. 566, ¶¶ 18, 23. We discern no error with the administrative judge's conclusion that the appellant did not prove that her disability was a motivating factor in the removal action. ID at 41-42. Because the appellant did not meet her initial burden, we do not reach the question of whether her disability was a "but-for" cause of the removal action. *See Pridgen*, 2022 MSPB 31, ¶¶ 40, 42.

¶28 Regarding the failure to accommodate claim, a different outcome is not warranted. On January 20, 2020, the appellant requested an accommodation of

---

[11] Under a mixed-motive analysis, an employee is entitled to some relief if her disability was a motivating factor in the decision, even if other factors also motivated the practice. *Southerland*, 119 M.S.P.R. 566, ¶ 23. An agency may limit the extent of the remedy if it proves by clear and convincing evidence that it would have taken the same action absent the impermissible motivating factor. *Id.*, ¶¶ 23-25.

telework 3 days per week based on her adjustment disorder.[12]  IAF, Tab 40 at 24-31.  The supporting documentation referenced her diagnosis, indicated that "certain environments can have [an impact] on her emotional well[-]being," and stated that the appellant should be allowed to "telework as much as is reasonably possible."  *Id.* at 25.  The agency denied her request for 3 days per week of telework, but it offered her 1 day per week of telework as an accommodation.  IAF, Tab 46 at 29-30.  The appellant declined this accommodation and was evidently unwilling to discuss other alternatives.  *Id.*  We view the appellant's unwillingness to discuss any other alternatives following the agency's offer of 1 day per week of telework as a failure to cooperate in the interactive process.  *See Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 21 (2014) (finding that the appellant failed to establish that the agency violated its duty of reasonable accommodation because she was not entitled to the accommodation of her choice and because the agency acted within its discretion to offer her reasonable and effective accommodations, which she declined); *see also Simpson v. U.S. Postal Service*, 113 M.S.P.R. 346, ¶ 16 (2010) (noting that the appellant was required to cooperate in the interactive process).

¶29      Moreover, we are not persuaded that the appellant's disability prevented her from participating in the investigation or that her efforts to obtain an attorney for the investigative interview should have been construed by the agency as a reasonable accommodation request.  The statute at 42 U.S.C. § 12132 (1990) states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  The appellant asserts, without support, that

---

[12] The appellant's counselor stated that she was diagnosed with an adjustment disorder with mixed emotional features claimed as combat stress in 2010.  IAF, Tab 40 at 25.  Records from the Department of Veterans Affairs show that the appellant was rated 30% disabled based on this condition in April 2010, and her rating was increased to 70% in May 2016.  *Id.* at 26-29.

Title II of the ADA "generally applies to interrogation of the mentally disabled and proposed evidence-based options for reasonable modification of interrogation practices to reduce the risk of false confessions." PFR File, Tab 3 at 18. Even if true, her communications with the Inquiry Officer regarding her efforts to obtain representation for the investigative interview did not state or even imply that she was seeking representation due to her medical condition or any concern about the role that her medical condition would play during any such interview. IAF, Tab 27 at 16-21. Moreover, the January 2020 accommodation request and associated medical documentation did not put the agency on notice that her medical condition somehow impacted her ability to attend, let alone participate in, the investigative interview. There is also no evidence that she requested any additional accommodation when she was on administrative leave. Having just requested an accommodation in January 2020, IAF, Tab 40 at 24-31, the appellant was familiar with the accommodation process and how to make such a request.

¶30     Finally, the relevant anti-discrimination statutes do not immunize disabled employees from being disciplined for misconduct in the workplace, provided the agency would impose the same discipline on an employee without a disability. *Burton v. U.S. Postal Service*, 112 M.S.P.R. 115, ¶ 16 (2009); *Laniewicz v. Department of Veterans Affairs*, 83 M.S.P.R. 477, ¶ 5 (1999). For these reasons, we affirm the administrative judge's conclusion that the appellant did not prove her failure to accommodate claim.

Penalty[13]

¶31     In the initial decision, the administrative judge stated that, when the Board sustains an agency's charges, it will defer to the agency's penalty unless it exceeds the range of allowable punishment by statute or regulation, or unless the

---

[13] The appellant does not challenge the administrative judge's finding that the agency proved nexus because the misconduct occurred at work or in direct connection to her work and her misconduct affected management's trust and confidence in her ability to perform her duties. ID at 42. We affirm this conclusion.

penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion. ID at 43. The administrative judge found that the deciding official considered the relevant *Douglas* factors, and there was no basis on which to override his decision or to conclude that the penalty was wholly unwarranted. ID at 44-45. Because we have affirmed the administrative judge's finding that the agency proved all three charges, but it did not prove all three specifications of the failure to follow leave procedures charge, we modify the initial decision to apply the following, slightly different legal standard: when all of the agency's charges are sustained, but some of the underlying specifications are not sustained, the agency's penalty determination is entitled to deference and only should be reviewed to determine whether it is within the parameters of reasonableness.[14] *Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996).

¶32    On review, the appellant argues that removal was an excessive and unreasonable penalty. PFR File, Tab 3 at 24. For example, she asserts that the administrative judge did not consider mitigating and aggravating factors. *Id.* at 24-25. In this regard, she states that she had no prior disciplinary record. *Id.* at 25. The administrative judge discussed the factors considered by the deciding official in the initial decision. ID at 44-45; IAF, Tab 26 at 30-31. In particular, the administrative judge noted that the deciding official considered the appellant's 10 years of Federal service and her military service, which the deciding official said were mitigating factors. ID at 45; IAF, Tab 10 at 31. However, the decision letter did not explicitly consider the appellant's lack of prior discipline as a mitigating factor. We have considered the appellant's lack of prior discipline as a mitigating factor, but we conclude that a different outcome is not warranted.

---

[14] The administrative judge's recitation of a different legal standard in the initial decision is not prejudicial to the appellant's substantive rights and provides no basis for reversal of the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

¶33    The appellant also contends that the agency's table of penalties states that the charge of disruptive conduct does not warrant removal but only a 5-day suspension as a first offense.  PFR File, Tab 3 at 22.  The appellant misstates the record.  The agency's Table of Offenses and Penalties states that, for a first offense of disruptive conduct, the penalty may range from a "5-day Suspension to Removal."  IAF, Tab 46 at 41.  Thus, this argument is not persuasive.

¶34    The appellant further contends that the administrative judge "failed to uphold the agency policy on progressive discipline."  PFR File, Tab 3 at 23.  Here, again, the appellant misstates the evidence.  The agency's Table of Offenses and Penalties states that, although the agency "policy favors progressive discipline, where appropriate, if the misconduct is egregious enough or is accompanied by sufficiently aggravating circumstances, progressive discipline may be inappropriate and [r]emoval . . . would be warranted for a first offense."[15]  IAF, Tab 46 at 33.  Because the sustained misconduct, particularly the disruptive conduct charge, is egregious, we discern no error with the agency's decision that removal is warranted under the circumstances.

¶35    The U.S. Court of Appeals for the Federal Circuit has held that "when mental impairment or illness is reasonably substantiated, and is shown to be related to the ground of removal, this must be taken into account when taking an adverse action against the employee."  *Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1356 (Fed. Cir. 2009).  Although not raised by the appellant, we modify the initial decision to consider her adjustment disorder as a mitigating factor.  Even if we find that her medical condition is entitled to some weight as a mitigating factor, the Board has found that a medical or mental impairment is not a significant mitigating factor in the absence of evidence that the impairment can

---

[15] The appellant also contends that she was never issued a performance improvement plan or a warning on work performance issues.  PFR File, Tab 3 at 23.  This argument does not warrant a different outcome because the appellant was removed for misconduct and not unacceptable performance.

be remedied or controlled, i.e., when the potential for rehabilitation is poor. *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001), *review dismissed*, 35 F. App'x 873 (Fed. Cir. 2002). The appellant has offered no evidence that her condition has been remedied or controlled, and she has not offered persuasive evidence to challenge the deciding official's conclusion that her potential for rehabilitation was "highly unlikely." IAF, Tab 10 at 31. We also find that her medical condition does not outweigh other relevant factors, including the nature and seriousness of the offenses, particularly as it relates to the disruptive conduct charge. Accordingly, for the reasons described in the initial decision, and as modified and supplemented herein, we conclude that the removal decision did not exceed the bounds of reasonableness for the sustained misconduct.

## NOTICE OF APPEAL RIGHTS[16]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file

---

[16] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. [5 U.S.C. § 7703](b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , [137 S. Ct. 1975](2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* [42 U.S.C. § 2000e](-5(f)) and [29 U.S.C. § 794a](.)

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. [5 U.S.C. § 7702](b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. [5 U.S.C. § 7702](b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[17]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[17] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:        /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.