**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| DAVID FERRY,<br>                    Appellant,<br><br>            v.<br><br>DEPARTMENT OF THE AIR FORCE,<br>                    Agency. | DOCKET NUMBER<br>DC-0752-21-0106-I-1<br><br><br>DATE:  December 21, 2023 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Mary Kuntz, Esquire, Washington, D.C., for the appellant.

Robert P. Erbe, Joint Base Andrews, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which upheld his removal based on sustained charges of conduct unbecoming a Federal employee and unacceptable performance.  For the reasons discussed below, we GRANT the appellant's petition for review.  We AFFIRM the administrative judge's decision to sustain the charges and her conclusion that the agency proved nexus.  However, we VACATE the administrative judge's penalty analysis.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

Instead, based on our assessment of the relevant penalty factors, we FIND that a 30-day suspension is the maximum reasonable penalty for the sustained misconduct.

## BACKGROUND

The appellant was a Supervisory General Engineer in the Air Force Civil Engineer Center Design and Construction Office at Ramstein Air Base, Germany, who was reassigned to a GS-14 General Engineer position for a temporary duty assignment (TDY) to a 10-month Civilian Developmental Education Program at the Air War College (AWC) in Montgomery, Alabama. The TDY began on July 9, 2019. During the 10 months that the appellant was at AWC, he failed to respond to his supervisor's repeated attempts to communicate with him concerning time and attendance matters and outplacement opportunities and began having problems meeting AWC academic requirements in 2020. Initial Appeal File (IAF), Tab 37 at 2, 14-16. On February 27, 2020, after the appellant failed to show progress on a self-led research project, despite counseling and assignment of a writing coach, the AWC Dean placed the appellant on academic probation. IAF, Tab 25 at 105. When the appellant continued to struggle to meet his academic obligations, on March 27, 2020, the Dean placed the appellant on academic probation a second time for failure to complete final papers for three of his courses. *Id.* at 106. The Dean warned the appellant that he could be disenrolled from AWC if he did not meet the submission dates for his final and mid-term papers. *Id.*

On May 1, 2020, after determining that the appellant had not turned in two of his final papers, the Dean advised the appellant's supervisor that the appellant would be disenrolled from the AWC. IAF, Tab 37 at 16. On May 11, 2020, the AWC issued to the appellant a Notification of Summary Disenrollment for failure to meet academic requirements. IAF, Tab 25 at 64. Because the appellant failed to meet performance expectations that had been tailored to his attendance at

AWC, his performance for the rating cycle that ended on March 31, 2020, was unacceptable on four of the five performance elements, and he received a summary rating of unacceptable. IAF, Tab 20 at 12-19.

The agency removed the appellant, effective October 28, 2020, based on charges of failure to maintain his security clearance as a condition of employment, conduct unbecoming a Federal employee, and unacceptable performance. IAF, Tab 19 at 10-13, Tab 25 at 5-9. The appellant filed a Board appeal and withdrew his hearing request. IAF, Tabs 1, 22. The administrative judge issued an initial decision in which she sustained the conduct unbecoming and unacceptable performance charges, found that the agency proved nexus, and concluded that removal was the maximum reasonable penalty for the sustained misconduct. IAF, Tab 38, Initial Decision (ID) at 10-21. The appellant has filed a petition for review, and the agency has filed a response. Petition for Review (PFR) File, Tabs 3, 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

An agency must establish the following three things to withstand a challenge to an adverse action against an employee pursuant to 5 U.S.C. chapter 75: (1) it must prove by a preponderance of the evidence that the charged conduct occurred; (2) it must establish a nexus between that conduct and the efficiency of the service; and (3) it must demonstrate that the penalty imposed is reasonable. 5 U.S.C. §§ 7513(a), 7701(c)(1)(B); *Malloy v. U.S. Postal Service*, 578 F.3d 1351, 1356 (Fed. Cir. 2009); *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). In his petition for review, the appellant concedes that the agency proved the conduct unbecoming and unacceptable performance charges, and it proved nexus. PFR File, Tab 3 at 16. We discern no error with the administrative judge's conclusions in this regard, and we affirm them herein. ID at 10-17. The only issue before the Board is the reasonableness of the removal penalty. PFR File, Tab 3 at 16.

In the initial decision, the administrative judge independently assessed the relevant penalty factors because she did not sustain all of the charges and the deciding official did not indicate that he would have imposed a lesser penalty if fewer than all charges were sustained. ID at 18. In pertinent part, the administrative judge noted that the unacceptable performance charge was "very serious," particularly given the appellant's high grade level and purpose at the AWC, a prestigious 10-month program that was to result in the appellant earning a master's degree in Strategic Studies. *Id.* She also noted that successful completion of the AWC program was the appellant's singular objective for the entire performance year, and he failed in this objective when he was placed on probation twice and disenrolled from AWC. *Id.* She further noted that the misconduct was repetitive, but there was no indication that the misconduct was committed maliciously or for personal gain. ID at 18-19. The administrative judge found that the sustained misconduct in the conduct unbecoming charge was "very serious," particularly since he was a high-level employee who was trusted to operate remotely during the 10-month AWC program, and he abused that trust. ID at 19. The administrative judge considered other relevant factors, such as the appellant's inability to perform at a satisfactory level, his supervisor's significantly diminished confidence in his ability to perform assigned tasks, and the fact that he was on notice that his actions constituted misconduct. ID at 19-20. The administrative judge also considered mitigating factors, such as the appellant's more than 20 years of Federal service, his history of good performance, and his "unblemished disciplinary record." ID at 20. The administrative judge further considered that the appellant's mental health struggles during this time were a "significant mitigating factor." *Id.* She noted that the appellant had potential for rehabilitation because of his commitment to continued mental health treatment, but she found that a lesser penalty was unlikely to deter future misconduct. *Id.* Ultimately, the administrative judge concluded that the appellant's misconduct was "too serious, to[o] extensive, and

too repetitive" to be mitigated, and she concluded that removal was the maximum penalty for the sustained misconduct.  ID at 20-21.

On review, the appellant argues that the removal penalty is not reasonable considering the penalty factors involving the potential for rehabilitation, mitigating factors, and the adequacy and effectiveness of alternative sanctions to deter such conduct.  PFR File, Tab 3 at 16.  For example, the appellant asserts that the administrative judge erred when she "reviewed quickly" the mitigating factors and failed to consider the "specific connection" between his diagnoses and the sustained misconduct.[2]  *Id.* at 20.  He also asserts that the "substantial mitigating force of mental impairments regularly outweighs even serious aggravating factors."  *Id.* at 21-23 (citing *Malloy*, 578 F.3d at 1356-57, *Bal v. Department of the Navy*, 729 F. App'x 923 (Fed. Cir. 2018), and *Bowman v. Small Business Administration*, 122 M.S.P.R. 217 (2015)).  The appellant further asserts that, when mitigating factors are properly evaluated, the maximum reasonable penalty for the sustained misconduct is a 30-day suspension.  *Id.* at 34.

Legal standard for evaluating the penalty

When the Board sustains fewer than all of the agency's charges, the Board may mitigate to the maximum reasonable penalty so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges.[3]  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).  The U.S. Court of Appeals for the Federal Circuit recently held that, in a situation in which fewer than all charges are sustained, the penalty factors should be independently analyzed.  *Williams v.*

---

[2] Contrary to the petition for review, the administrative judge acknowledged in general terms the connection between the appellant's medical conditions and the sustained misconduct.  *See* ID at 20 ("It is unrebutted in the record that the appellant's then-undiagnosed depression and attention deficit disorder . . . significantly impacted his ability to perform his duties and maintain communications with [his supervisor].").

[3] The deciding official did not indicate in his decision letter that he would have imposed a lesser penalty if fewer than all three charges were sustained.  ID at 18; IAF, Tab 19 at 10-13.

*Federal Bureau of Prisons*, 72 F.4th 1281, 1284 (Fed. Cir. 2023). Because the administrative judge only sustained the conduct unbecoming and unacceptable performance charges, a decision which we have affirmed herein, we will conduct an independent assessment of the penalty factors as set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).[4] We have considered the relevant *Douglas* factors. For the following reasons, we conclude that a 30-day suspension is the maximum reasonable penalty for the sustained misconduct.

Discussion of the *Douglas* factors

*The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated*

The nature and seriousness of the offense, and its relation to the appellant's duties, position, and responsibilities, is the most important factor in assessing the reasonableness of a penalty. *Singh v. U.S. Postal Service*, 2022 MSPB 15, ¶ 18. There is no doubt that conduct unbecoming a Federal employee and unacceptable performance are serious charges. *Moore v. Department of the Army*, 59 M.S.P.R. 261, 267 n.2 (Fed. Cir. 1993); *Hellein v. Department of Agriculture*, 8 M.S.P.R. 373, 375 (1981). The conduct underlying the sustained charges occurred over the course of 10 months and was frequently repeated. Moreover, the administrative judge correctly described that completion of the AWC program was the appellant's "singular objective" for the entire performance year. ID at 18. Thus, his unacceptable performance was directly related to his position. It does not appear, however, that any of the misconduct was committed maliciously or for gain.

---

[4] Because we are conducting an independent analysis of the penalty factors, we need not address the appellant's arguments regarding the agency's analysis of these factors. PFR File, Tab 3 at 15-18.

*The employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position*

The parties do not dispute that, immediately prior to his entry at the AWC, the appellant was a supervisor, but he was not a supervisor during his time at AWC. IAF, Tab 19 at 21-22, 94, Tab 20 at 49-54, Tab 25 at 98. However, the appellant was an experienced GS-14 General Engineer attending a prestigious program, which would have resulted in a master's degree in Strategic Studies, and for which he was entirely remote.

*The employee's past disciplinary record*

The appellant had no prior disciplinary record. IAF, Tab 25 at 98.

*The employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability*

The parties do not dispute that the appellant had approximately 23 years of prior Federal service. The parties acknowledge that, for the two appraisal periods prior to the 2020 removal, the appellant was rated as Exceptional or Outstanding, and there was no indication that he did not get along with colleagues or had any difficulty working with other employees both before and during his time at AWC. IAF, Tab 19 at 37, 70-84, Tab 25 at 98. In fact, his supervisors for the approximately 9 years prior to his removal, including a lengthy period during which he was stationed in Germany, all provided overwhelmingly positive statements regarding the appellant's performance, leadership, and professionalism. IAF, Tab 19 at 39-41. In short, the appellant appears to have been an exemplary employee prior to his attendance at AWC. We acknowledge, however, that the appellant's failure to maintain contact with his supervisor or advise her of any of his academic difficulties at AWC is evidence of a lack of dependability. IAF, Tab 37 at 14-16.

*The effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties*

In her declaration made under penalty of perjury, the appellant's supervisor described the "extraordinary measures" that she had to take to "get responses [from the appellant] to basic questions" from July 2019 to April 2020, and how she was "blind-sided" by the "devastating news" regarding his academic problems and disenrollment from the AWC. IAF, Tab 37 at 14-16. Furthermore, she stated in her *Douglas* factors analysis that there was "definitely . . . a loss of trust and confidence" in the appellant's ability to perform assigned duties. IAF, Tab 25 at 85. The administrative judge found reasonable the supervisor's statement that she doubted the appellant's ability to perform his duties going forward. ID at 19. While it is understandable that the appellant's issues during his time at AWC affected his supervisor's belief in his ability to perform his duties, in light of the surrounding circumstances and mitigating factors discussed below, we conclude that the sustained offenses do not show that the appellant will be unable to perform at a satisfactory level when performing the duties of his position of record.

*The consistency of the penalty with those imposed upon other employees for the same or similar offenses*

There is no allegation of disparate penalties in this matter.

*The consistency of the penalty with any applicable agency table of penalties*

The proposing official stated that, for a first offense of conduct unbecoming, the proposed penalty is a reprimand to a removal. IAF, Tab 25 at 87. The deciding official stated in his *Douglas* factors checklist that the charged conduct was listed in the table of penalties and that the proposed penalty was within the range identified therein. *Id.* at 99. Although we are unable to find the agency's table of penalties in the record, the appellant does not contend on review that removal is inconsistent with the agency's table of penalties.

*The notoriety of the offense or its impact upon the reputation of the agency*

There is no notoriety involved in this matter.

*The clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question*

The appellant does not dispute that he needed to maintain regular contact with his supervisor while he was at AWC or that he needed to comply with AWC academic requirements.

*The potential for the employee's rehabilitation*

The Board has found that an appellant seeking treatment for his medical problems indicates a potential for rehabilitation. *Vitanza v. U.S. Postal Service*, 89 M.S.P.R. 319, ¶ 6 (2001); *Bond v. Department of Energy*, 82 M.S.P.R. 534, 545 (1999); *see Bal*, 729 F. App'x at 929 (finding that Mr. Bal demonstrated a potential for rehabilitation through "competent evidence" that he, among other things, continued to seek counseling). As discussed further below, the appellant had significant potential for rehabilitation because of his commitment to ongoing mental health treatment. ID at 20; IAF, Tab 19 at 18, 32, 34-35.

*Mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter*

Evidence that an employee's mental impairment played a part in the charged conduct is ordinarily entitled to considerable weight as a mitigating factor. *Malloy*, 578 F.3d at 1357; *Bowman*, 122 M.S.P.R. 217, ¶ 13. We have considered the evidence in the record relating to the appellant's mental health conditions and the sustained misconduct.

The appellant stated in an August 31, 2020 declaration, made under penalty of perjury, that he had a "growing sense that I was struggling with some sort of mental health issue" while at AWC, and in the spring of 2020 he began an initial evaluation and treatment with a physician on staff at AWC "for what he suspected (and was later confirmed) was a depressive disorder." IAF, Tab 21 at 30. After

the appellant returned to his duty station in Washington, D.C., in June 2020, he began seeing a psychologist. *Id.* at 18. The psychologist diagnosed the appellant with Major Depressive Disorder, recurrent, moderate, and attention deficit disorder (ADD), and began treating the appellant's depression through medication and psychotherapy. IAF, Tab 19 at 34.

The psychologist explained how the appellant's conditions affected him, stating that "symptoms of depression and [the appellant's] difficulties with concentrating, paying attention, and procrastination[] all would likely have contributed to his recent work difficulties." *Id.* at 35. The psychologist further explained that "depression interferes with a person's ability to function in all areas of life," and the appellant "described . . . having felt hopeless at times over the last few years due to his depression," which would have "negatively impacted . . . his job performance." *Id.* He also explained that "[p]eople with ADD often do well in situations where they are dealing with a stream of novel stimulation," such as the appellant's previous jobs where he had to "put out fires" and "[deal with] a new problem every day." *Id.* However, when the appellant was at AWC, "he had long stretches when he was on his own, dealing with a long-term assignment," and "[p]eople with ADD . . . tend to have difficulty working in these conditions." *Id.* The psychologist further explained that the appellant's "depression worsened due to his difficulty coping with school, which further negatively affected his ability to function." *Id.* The appellant's psychologist stated that he was "confident that if [the appellant] continues to receive treatment for his depression and also receives help managing his difficulties with attention, concentration, and procrastination, his mood will improve and he will be able to learn and utilize strategies to deal with the stressors that have negatively impacted on his work performance in recent years"

and "he will be able to perform in his job at his previous level of exemplary functioning."[5]  *Id.*

In his declaration, the appellant stated that he continues to see his therapist and take his medication.  *Id.* at 32.  He observed that he had "gradual but measurable" improvement.  *Id.*  He stated that receiving the notice of proposed removal was a "significant additional stressor," and he increased the frequency of his therapy sessions as a result.  *Id.*  He also observed that his "ability to respond positively to significant increased stress and continue to function" is "a positive sign of [his] condition responding to treatment and a return to normalcy."  *Id.*

In a September 24, 2020 note, the appellant's psychologist stated that the appellant "is making progress both in a reduction of symptoms of depression and in managing the symptoms of his [ADD]."  *Id.* at 18.  The psychologist explained that his assessment was based on his observation of the appellant "being able to plan and execute action on his behalf," "[seeking] out and . . . attending a weekly group to help him successfully manage his difficulties with attention, concentration, and procrastination," and continuing to take his prescribed medication and attend twice weekly therapy sessions.  *Id.*  The psychologist concluded that he was "confident" that the appellant "will continue to diligently pursue the above steps and continue to make progress."  *Id.*

We also acknowledge that, when the appellant first began to recognize that he was having mental health issues, he was away from home while at AWC and was less able to effectively address his problems than he would have been if he had been performing his normal duties at his duty station.  Moreover, although the appellant's difficulties began prior to the COVID-19 pandemic, the record indicates that his performance and communication issues appear to have peaked

---

[5] The Board has found that a mental impairment is not a significant mitigating factor in the absence of evidence that the impairment can be remedied or controlled, i.e., when the potential for rehabilitation is poor.  *Mingledough v. Department of Veterans Affairs*, 88 M.S.P.R. 452, ¶ 12 (2001).  Based on the medical documentation, it appears that the appellant's mental impairments could be controlled.

following the quarantine instituted after the pandemic began in March 2020.  The appellant provided evidence that his isolation during this period exacerbated his conditions.  IAF, Tab 19 at 30.

*The adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others*

The deciding official stated in the decision letter that, considering the "gravity of the collective misconduct and the adverse impact on the [G]overnment, alternative/lesser sanctions would be inappropriate, inadequate, and ineffective in deterring such conduct in the future."  IAF, Tab 19 at 10-11. The appellant, in his response to the notice of proposed removal, proposed reinstatement with conditions, including an annual mental health fitness-for-duty examination, compliance with mental health therapy, and participation in mental health outreach.  *Id.* at 23-24.  Under the unique circumstances of this case, including the ample evidence that the appellant's mental health conditions contributed to the misconduct, his stated commitment to continuing mental health treatment, and his previous exemplary work record, we conclude that a suspension would be an adequate deterrent to future misconduct.

A 30-day suspension is the maximum reasonable penalty for the sustained misconduct.

Based on our review of the *Douglas* factors, while there are a number of aggravating factors, there are also significant mitigating factors.  Importantly, the appellant has established that his mental health conditions are connected to the sustained misconduct, and we agree with his assertion that his conditions should be considered as a substantial mitigating factor.  We have also considered the appellant's reliance on *Malloy, Bal, Bowman,* and other cases to support the proposition that the removal penalty should be mitigated.  PFR File, Tab 3 at 21-23.  Indeed, the appellant correctly notes that there are many similarities between the aggravating and mitigating factors in those cases and in this case.  *Id.*

We agree with the appellant that, under the circumstances of this case, removal exceeds the maximum reasonable penalty. Rather, considering the unrebutted opinion of the appellant's psychologist—that the appellant's mental health was being treated successfully and he will be able to resume functioning at a high level in the workplace—as well as the appellant's excellent past work record and many years of service without prior discipline, the appellant has a strong potential for rehabilitation. We therefore conclude that a 30-day suspension is the maximum reasonable penalty for the sustained misconduct. *See, e.g., Bowman,* 122 M.S.P.R. 217, ¶¶ 13-15 (finding that a 30-day suspension is the maximum reasonable penalty based on the medical evidence and hearing testimony regarding the impact of the appellant's mental illness on the misconduct and his more than 20 years of successful service).

## ORDER

We ORDER the agency to cancel the removal action and retroactively restore the appellant, effective October 28, 2020, to his GS-14 General Engineer position and substitute in its place a 30-day suspension. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.

You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT
## REGARDING YOUR RIGHT TO REQUEST
## COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your compensatory damages, including pecuniary losses, future pecuniary losses, and nonpecuniary losses, such as emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.  To be paid, you must meet the requirements set out at 42 U.S.C. § 1981a.  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.204.  If you believe you meet these requirements, you must file a motion for compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[6]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113. You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file

_____

[6] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[7]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

---

[7] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Jennifer Everling*

FOR THE BOARD: _____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.

|  | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |
| --- | --- |

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63).
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.